No. 85-395

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

FRANK DONNES,

Plaintiff and Respondent,

-vs-

GEORGE ORLANDO, Personal Representative
of the Estate of FRANK DONNES, Deceased,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Treasure,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kelly & Halverson, P.C.; Sheehy, Prindle & Finn,
Patrick R. Sheehy, Billings, Montana

For Respondent:

Russell K. Fillner, Billings, Montana

Submitted on Briefs:  Feb. 26, 1986

Decided: June 4, 1986

Filed:   JUN 4 - 1986

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Donnes brought this action in the Treasure County District Court against the estate of his uncle on his claim for services rendered and material furnished. Orlando, as personal representative of the estate, answered and filed two counterclaims alleging loans from decedent to Donnes.

Following a nonjury trial, the District Court ruled that Donnes was not entitled to compensation for work done from October 20, 1978 through August 18, 1982 because this work was a gratuity from Donnes to his uncle. The District Court further held that Donnes was entitled to foreclosure of his mechanics' lien in the amount of $20,685.00 for a rip rap project performed from September 3, 1982 through November 9, 1982, and costs, attorney fees, and interest as provided by law. Orlando received judgment on his counterclaim in the amount of $1,554.00.

Shortly thereafter, jurisdiction of Treasure County was transferred from the Thirteenth to the Sixteenth Judicial District. A hearing was held before the new District Court judge concerning attorney fees. The District Court awarded Donnes attorney fees for foreclosure of the lien in the amount of $7,455.00 plus costs.

Orlando appeals the judgment, and Donnes cross-appeals that part of the judgment denying his claim against Orlando.

We affirm.

The issues raised by Orlando are:

1. Whether the District Court erred in awarding Donnes $20,685.00 for the rip rap project?

2. Whether the findings of the District Court are adequate and support the court's decision?

3. Whether the District Court erred in awarding Donnes' attorney fees?

Donnes raises the following issue on cross-appeal: Whether the District Court erred in denying Donnes' claim for work done prior to the rip rap job?

Donnes is a contractor primarily engaged in earth moving. His uncle, Frank, owned a farm situated on the Big Horn River. Donnes' father died when he was nine years old. Donnes developed a close relationship with his uncle. The two visited one another once or twice a week and telephoned in between. Donnes and his uncle assisted each other in their respective businesses--the uncle by driving pickups on occasion, visiting job sites with lunches and other supplies, and assisting Donnes financially by making him loans and maintaining funds in their joint names. Donnes assisted his uncle in repairing fence, gathering cattle, fixing water wells, shingling the roof, and generally assisting the uncle whenever requested. These were friendly exchanges of services between relatives for which neither expected compensation and for which no claim is made.

Additionally, however, the uncle allowed Donnes to store equipment on the ranch and use the ranch shop and tools to maintain and repair his equipment as need arose. Donnes performed work on the ranch involving dozing, trenching and ditch cleaning without any express understanding as to payment other than that the uncle would "make it worthwhile." As a result, Donnes kept no records of dates, hours, equipment used, or materials provided, and neither prepared

nor submitted any bills (with two or three exceptions) to his uncle.

In addition to this work, Donnes agreed to perform some rip rap work along the bank of the Big Horn where it was eroding and endangering an irrigation pipe line. Donnes began the project on September 3, 1982. On September 9, 1982, the uncle was found murdered on his ranch. Donnes completed the rip rap project on November 9, 1982. Following denial by the estate of his claims, Donnes filed this action in District Court.

The first issue raised by Orlando is whether the District Court erred in awarding Donnes $20,685.00 for the rip rap project? Orlando claims that the uncle did not agree to pay Donnes $20,685.00 for the project. Instead, he agreed to pay only $25.00 per lineal foot for a total of $6,700.00. This contention is based on the fact that the uncle applied to the Agricultural Soil and Conservation Service (ASCS) for cost sharing for the rip rap project knowing that the ASCS limit for such projects was $25.00 per lineal foot. Donnes contends that his uncle agreed to pay him $20,685.00 for the project.

As we have stated in the past, the judgment of the trial court is presumed to be correct and this Court will draw every legitimate inference to support that presumption. Findings will not be overturned unless there is a clear preponderance of the evidence against them, recognizing that evidence may be weak or conflicting yet still support the findings. Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 38 St.Rep. 1109.

There is substantial credible evidence to support the District Court's decision to award Donnes $20,685.00 for the

- 4 -

rip rap job, and we will not overturn that decision on appeal. Donnes testified that he discussed the rip rap project with his uncle in August 1982. Donnes informed his uncle that he had bid a similar job for Montana Power Company at $20,685.00, and that his uncle's job would be about the same price. The District Court found that the cost of the Montana Power Company project was established by competitive bidding, and at the time of Donnes' discussions with his uncle, it was assumed the uncle's job was comparable and would not cost any more than the company project. Orlando's contention that the uncle's application for ASCS cost sharing proves that he agreed to pay only $6,700 is insufficient to warrant reversing the District Court. The uncle failed to complete the necessary steps for cost sharing by not obtaining a Federal Corps of Engineer 404 permit. We will not reverse the District Court absent a clear preponderance of the evidence against them. No such preponderance exists in this case.

The second issue raised by Orlando is whether the findings of the District Court are adequate and support the court's decision? Orlando cites In re the Marriage of Wilmot (1982), 199 Mont. 477, 649 P.2d 1295, to support his contention that the court's findings were fatally deficient. In Wilmot, we remanded the case because the District Court's findings were conflicting and contradictory, with numerous references to evidence without any indication of the weight given that evidence. Orlando argues the findings in this case are equally deficient--that the findings merely restate the parties' contentions and evidence with no indication of the weight it attached to the evidence, or how the trial

court came to the ultimate finding that the uncle agreed to pay Donnes $20,685.00.

We do not agree.  In Jensen, 631 P.2d 700, 703, we stated:

> Our ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented.

The findings in Wilmot were contradictory and provided no basis for review.  In this case, while some of the findings restate the contentions of the parties, the findings are not contradictory, are supported by the evidence, and provide a basis for review.  The District Court found, supported by substantial credible evidence, that Donnes and his uncle discussed the rip rap project, and that the uncle agreed to pay Donnes the same price as the Montana Power Company project.  The court stated in finding no. 37:

> [T]he evidence does support the conclusion that the cost of the Montana Power Company project had been established by competitive bidding and, that at the time of [Donnes'] discussions with his uncle, it was assumed that the uncle's job would be comparable and would not be billed by [Donnes] to his uncle at any higher price.

The District Court was faced with conflicting evidence and resolved the conflict in favor of Donnes.  That is the duty of the District Court, and we do not agree that the findings were so inadequate as to require remand.

Orlando further contends that because the findings do not meet the adequacy test found in Jensen, as they are neither sufficiently comprehensive nor pertinent to the issue to provide a rational basis for decision, then this Court is free to analyze the facts and apply the law without remand. Since we have concluded that the findings are adequate to support the decision, we need not address this issue.

The final issue raised by Orlando is whether the District Court erred in awarding Donnes his attorney fees? We note initially that the determination of attorney fees is largely discretionary with the District Court, and we will not disturb its judgment in the absence of an abuse of that discretion. Collins Agency v. Hagerott (Mont. 1984), 684 P.2d 487, 41 St.Rep. 1375; Carkeek v. Ayer (1980), 188 Mont. 345, 613 P.2d 1013. Orlando contends that the award of attorney fees in this case was improper based on four points. First, he claims that Judge Coate abused his discretion by awarding fees in a case he did not try because he could not know all of the circumstances surrounding the underlying foreclosure action. Judge Coate stated in his memo opinion and order:

> When considering the question of reasonable attorney fees, the presiding trial judge is certainly in the best position to make that determination.

However, Judge Coate also pointed out that the parties had two months following the judgment and prior to the change in jurisdiction to bring the matter of attorney fees before the judge who presided over the foreclosure action. Neither side did, and on January 7, 1985, jurisdiction of Treasure County was transferred from the Thirteenth to the Sixteenth Judicial District.

A judge's jurisdiction over a case is a matter of law, and Judge Coate obtained jurisdiction over this case as a matter of law on January 7, 1985. While it is preferable that the presiding trial judge consider the question of attorney fees, it is not mandatory. We do not agree that Judge Coate abused his discretion by determining Donnes' attorney fees.

Second, Orlando contends it was not reasonable for the District Court to grant Donnes' entire attorney fees when only part of the attorney's time was spent on the lien foreclosure. In this case, the estate filed a counterclaim against Donnes and it is impossible to segregate the attorney's time between foreclosure of the mechanic's lien and defense of the counterclaim. As Judge Coate stated:

> Each case must be decided on its own facts and the Court cannot say that attorney fees should be limited to a certain percentage of the lien that was found to exist . . . Defendant does not attack counsel's hourly rate nor the number of hours counsel spent on this case.

We have stated that where an attorney's time cannot be clearly segregated, he is entitled to a reasonable fee for the case. St. Paul Fire and Marine Insurance Co. v. Cumiskey (Mont. 1983), 665 P.2d 223, 40 St.Rep. 891. The District Court found that $75.00 an hour was a reasonable fee, and that 99.4 hours was a reasonable amount of time for this case. We agree.

Orlando's third argument is that attorney fees were improper where the judgment Donnes received was less than half of what he asked for. This is incorrect. Judge Coate stated:

> Counsel cannot be denied their fee simply because a large recovery was not obtained.
>
> . . .
>
> The fact that Plaintiff did not receive all that he was seeking does not prove that counsel is not entitled to a just fee.

In Schillinger v. Brewer (Mont. 1985), 697 P.2d 919, 42 St.Rep. 408, plaintiff sought to enforce his mechanic's lien. The District Court found for plaintiff with an offset for the defendant that reduced the judgment below the amount of defendant's last offer. We reversed the District Court's

- 8 -

award of attorney fees to defendant and remanded the case for a determination of attorney fees for plaintiff. We reasoned that the plaintiff, in establishing his lien, was entitled to attorney fees for the entire action in the District Court.

In this case, Donnes established his lien. Section 71-3-124, MCA, mandates an award of attorney fees. The fact that Donnes did not receive the entire amount of his claim does not alter this result. The award of attorney fees was proper.

The fourth argument is that the District Court erred in awarding attorney fees for time spent collecting attorney fees. While this argument may be correct, it does not apply in this case. We held in Ring v. Hoselton (1982), 197 Mont. 414, 643 P.2d 1165, that a judgment is not final until all the issues have been determined including the determination of attorney fees. Here, the eight hours spent by Donnes' counsel at the hearing before Judge Coate were spent determining attorney fees, not collecting those fees. Time spent determining attorney fees is as much a part of the case as establishing the lien. We hold that the District Court did not abuse its discretion by awarding Donnes attorney fees in the amount of $7,455.00.

Turning now to the issue raised by Donnes on cross-appeal, Donnes contends that the District Court erred in denying his claim for work done prior to the rip rap project. The work occurred from 1978 through 1982, and consisted of dozing, trenching, backhoe work, grading, and the like. The District Court found that Donnes and his uncle were so close a presumption arose that this work was performed gratuitously. There is substantial credible

evidence to support this finding and we will not disturb it on appeal. The District Court stated in finding no. 9:

> [Donnes] testified that he was very close to his uncle. [Donnes'] father died when he was only 9 years of age. From the time [Donnes] was 15 years of age to the time of the death of his uncle, their relationship grew to the point where [Donnes] felt that his uncle would "give him anything" and do anything for him. Likewise, [Donnes] felt the same way toward his uncle.

The court further noted that Donnes spent several summers on his uncle's ranch helping with work. Although Donnes and his uncle lived 60 miles apart during the period in question, they "were in practically continuous communication--by visits one from the other once or twice a week, and by telephone calls in between." Additionally, Donnes and his uncle helped each other in their respective businesses, and the uncle allowed Donnes "to store his equipment on the ranch and use the ranch shop and tools to maintain and repair his equipment as the occasion arose."

The District Court acknowledged that generally the relationship between uncle and nephew is insufficient to raise a presumption of gratuity.

> However, in this case, the evidence clearly shows that a very close family relationship did, in fact, exist, as a consequence of the death of the nephew's father, resulting in the nephew and uncle living together at times and thereafter working together in a continuous relationship. Their relationship was much closer than that of the usual uncle and nephew situation.

The record supports the finding that the close family relationship between Donnes and his uncle raises a presumption that the work in question was performed gratuitously. Once the presumption is applied, it is the burden of the party seeking compensation to overcome that presumption. Shurrum v. Watts (Idaho 1958), 324 P.2d 380,

385. Donnes failed to carry this burden. The District Court found that Donnes performed the work in question:

> [w]ithout there being any express understanding as to payment to [Donnes], other than that the uncle would "make it worthwhile," and [Donnes'] feeling that this meant he would end up receiving either money or a part of the ranch at sometime in the future.

This evidence is insufficient to justify an express or implied agreement that Donnes would be paid for his work.

Finally, Donnes argues that the issue of presumption of gratuity should have been raised by Orlando in his pleadings as an affirmative defense, and not raised in the final post-trial brief. This is correct. However, we have long held that pleadings will be deemed amended to conform to proof received without objection. Franck v. Hudson (1962), 140 Mont. 480, 373 P.2d 951; Joy v. Little (1958), 134 Mont. 82, 328 P.2d 636. In this case, Donnes raised the issue of the closeness of the family relationship during trial without the necessity of Orlando raising it as an affirmative defense. He testified as to their relationship, and the fact that they often helped each other with no expectation of compensation. Orlando availed himself of the defense without the necessity of pleading it affirmatively. Therefore, Donnes' argument must fail.

For the reasons stated above, we affirm the District Court in all respects.

_William E. Hunt_
Justice

We Concur:

- 11 -

_____
Chief Justice

John Conway Harrison
_____

_____

_____
Justices