No. DA 06-0407

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 123

LHC, INC., a Montana corporation,

        Plaintiff and Respondent,

    v.

ROBERTO ALVAREZ, as Trustee of the Alvarez
Family Trust u/d/t dated October 10, 1088,

        Defendant and Appellant,

    and

FIRST NATIONAL BANK OF MONTANA, INC.,

        Defendant.


APPEAL FROM:    The District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DV 04-662C,
                Honorable Stewart E. Stadler, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

        Phillip J. O'Connell, Attorney at Law, Missoula, Montana

        For Respondent:

        Paul G. Sandry and Scott G. Hilderman, Johnson, Berg,
        McEvoy & Bostock, PLLP, Kalispell, Montana


                Submitted on Briefs:  April 18, 2007

                        Decided:  May 30, 2007

Filed:

                           _____
                                    Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Plaintiff LHC, Inc., filed a construction lien against defendant Roberto Alvarez and defendant First National Bank of Montana, Inc.  The Bank was later dismissed pursuant to the stipulation of the parties.  LHC, a concrete and gravel supplier, had supplied concrete to John Young, d/b/a D Bar J Logging, Inc., and D Bar J Asphalt (Young), a contractor employed by Alvarez to do paving work.  Young failed to pay LHC the total due for the supplied material.  LHC then filed a construction lien against Alvarez's property.  Alvarez admitted that concrete supplied by LHC was used in the construction of its mini-storage facility, but disputed the dates and amount supplied, as well as the validity of the construction lien.  After a bench trial, the District Court enforced the construction lien and awarded prejudgment interest as well as attorney fees and costs.  Alvarez appeals from the judgment.  We affirm.

¶2     Alvarez raises four issues on appeal:

¶3     I.  Did the court err when it considered deliveries outside of the timeline established in LHC's construction lien?

¶4     II.  Did the court err in finding that LHC's concrete was delivered to Alvarez's mini-storage facility on August 11, 12 and 13?

¶5     III.  Did the court err in awarding prejudgment interest?

¶6     IV.  Did the court err in awarding attorney fees?

## BACKGROUND

¶7     In 2003, Alvarez engaged Young to perform paving services in connection with the construction of a mini-storage facility.  Young purchased concrete and other materials

from LHC for use at the Alvarez property. At the time, Young had outstanding debts to LHC from past projects unrelated to the work he was doing for Alvarez.

¶8 LHC delivered concrete to the Alvarez property from August 5 to 8, 2003, as recorded in invoice 6521 (in the amount of $20,119). Invoice 24470 is for concrete delivered to the Alvarez property on August 14, 2003 (in the amount of $400.50). Invoice 6576 is, according to LHC's records, for delivery on August 11, 12, and 13, 2003 (in the amount of $3356.10). The fourth invoice, 6612, is for flowboys and water trucks delivered on July 29 and 30 and August 5, 7, and 8, 2003 (in the amount of $4,475).

¶9 LHC did not maintain separate accounts for Young's different projects. At the time Young began purchasing materials for use on Alvarez's property, he had an outstanding balance of between $28,000 and $29,000 with LHC. When Young made payments to LHC, LHC applied those payments to Young's oldest outstanding invoices.

¶10 Alvarez paid Young a total of about $60,000 for his work. On August 25, 2003, Young paid LHC $30,000. Only about $4,000 of this went to the Alvarez invoices. The rest went to other job invoices incurred prior to the Alvarez project. On October 9, 2003, Young paid LHC $10,000. LHC directed portions of this payment to invoices incurred by Young after the Alvarez project.

¶11 On November 10, 2003, LHC filed a construction lien on Alvarez's property. The lien stated that the balance remaining unpaid was $16,568, together with interest and costs. Additionally, the lien stated that the "materials were first furnished on August 9, 2003, and were last furnished on August 14, 2003." On September 7, 2004, Alvarez filed a complaint against LHC. On October 1, 2004, LHC filed a separate claim against

3

Alvarez. The two cases were consolidated. After a bench trial, the court found for LHC, granting judgment on the lien in the amount of $24,241.40, including $5,945 in attorney fees, $620 in costs, and $3,474.82 in prejudgment interest from the date of the filing of the lien.

¶12 Alvarez appeals the District Court's enforcement of the lien as well as its grant of attorney fees and prejudgment interest.

## STANDARD OF REVIEW

¶13 We review conclusions of law, including statutory interpretation, *de novo*. *James Talcott Const. v. P & D*, 2006 MT 188, ¶ 26, 333 Mont. 107, ¶ 26, 141 P.3d 1200, ¶ 26.

¶14 We review findings of fact to determine whether the findings are clearly erroneous using a three-part test. First, we review the record to determine if the findings are supported by substantial evidence; second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of the evidence; and third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still conclude that a finding is clearly erroneous when a review of the record leaves the Court with the definite and firm conviction that a mistake has been made. *James Talcott Const.*, ¶ 26 (citations omitted).

¶15 We review a district court's award of prejudgment interest *de novo*. *James Talcott Const.*, ¶ 28 (citations omitted).

¶16 We review a district court's order granting or denying attorney fees and costs to determine whether the court abused its discretion. *James Talcott Const.*, ¶ 27 (citations omitted).

4

**DISCUSSION**

¶17 **I. Did the court err when it considered deliveries outside of the timeline established in LHC's construction lien?**

¶18 Alvarez contends that the court should not have granted judgment for payments made outside of the dates listed in LHC's construction lien. The lien states that it is for materials furnished between August 9 and August 14, 2003. Section 71-3-535(3)(g)(i) and (ii), MCA, requires that a lien state the dates materials were furnished. Thus, according to Alvarez, the claimed lien should not be enforced for the amounts documented in invoice 6521 (August 5 to 8) and invoice 6612 (July 29 and 30 and August 5, 7 and 8), because these invoices are for delivery dates not stated in the lien.

¶19 The District Court, however, refused to consider this argument because Alvarez raised it for the first time in his post-trial findings of fact and conclusions of law. Alvarez disputes this and asserts that he argued the issue in his pretrial order by stating: "[t]he LHC Lien was filed without right whatsoever." Similarly, Alvarez stated in the complaint that "[t]he LHC lien is without right whatsoever."

¶20 It is well-established that we will not address issues on appeal that were not properly raised in the district court. *Nason v. Leistiko,* 1998 MT 217, ¶ 11, 290 Mont. 460, ¶ 11, 963 P.2d 1279, ¶ 11 (citations omitted). We concluded in *Marsh v. Overland,* and reaffirmed in *Nason*, that where a party fails to raise an issue in the pleadings, does not present argument on the issue during the hearing on the merits of the case, does not move to amend the pleadings to conform to any evidence presented and raises the issue for the first time in a post-hearing memorandum that the district court does not address in

5

its order, the issue has not been timely raised and may not be raised on appeal. *Nason*, ¶ 18 (citing *Marsh v. Overland,* 274 Mont. 21, 29, 905 P.2d 1088, 1093 (1995)).

¶21    Here, Alvarez's general assertion, in his complaint and in the pretrial order, that the lien was filed "without right whatsoever," failed to specifically raise the argument that delivery dates not listed in the lien should not be enforced. Other than his general statement that the lien was without right, Alvarez did not raise the issue in the pleadings, did not amend the pleadings to include the issue, and did not raise the issue at trial. Finally, the District Court refused to consider Alvarez's argument. As Alvarez failed to timely raise the issue in the district court, we decline to address it on appeal.

¶22    **II.    Did the court err in finding that LHC's concrete was delivered to Alvarez's mini-storage facility on August 11, 12 and 13?**

¶23    Alvarez also argues that LHC failed to prove that concrete was delivered to Alvarez's property on August 11, 12 and 13, as claimed in the lien. LHC's sole evidence that delivery occurred on these dates was invoice 6576 and the corresponding scale tickets. Only one employee, Carol Phillips, LHC's controller, testified regarding invoice 6576. She testified that she did not know who provided the information on the invoice and scale tickets, in particular the dates and the location. She further testified that the material was not hauled by an LHC truck, that she did not know who hauled the material and that she had no independent knowledge of where the material was delivered, other than what was written on the invoice and scale tickets. Finally, Alvarez testified that no materials were delivered after August 8.

6

¶24 Alvarez is correct that § 71-3-524, MCA, requires that materials be supplied with the intent that they be incorporated into an improvement on the property to which the lien attaches and that the materials actually are incorporated into the improvement. Further, the delivery of materials to the site of the improvement, whether by the lien claimant or another, creates a presumption that the materials were incorporated. Section 71-3-524(2), MCA.

¶25 Here, based on invoice 6576 and the corresponding scale tickets, which were submitted without objection and explained by Phillips, the District Court determined that materials were delivered, on August 11, 12 and 13, to Alvarez's property and subsequently used in the construction of the mini-storage facility. Despite Alvarez's contention otherwise, the evidence presented to the court was substantial. Once a proper foundation has been laid, a court may rely on business records as evidence that an event took place. Here, Alvarez did not object to the admission of the invoice or scale tickets and admitted that the proper foundation was laid. Both the invoice and scale tickets state that on August 11, 12 and 13, asphalt was delivered to "ASHRD STG." As Alvarez's mini-storage facility is located on Ash Road, these documents indicate that materials were delivered to Alvarez's property on August 11, 12 and 13. The District Court's corresponding determination was thus not clearly erroneous.

¶26 **III. Did the court err in awarding prejudgment interest?**

¶27 Alvarez argues that prejudgment interest is not appropriate under § 27-1-211, MCA, because the court rejected LHC's accounting and reduced the lien from $16,568 to $14,201.58. Thus, according to Alvarez, the amount was not certain.

¶28    Section 27-1-211, MCA, provides:

> Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover [is vested] upon a particular day is entitled also to recover interest thereon from that day . . . .

¶29    The three criteria which must be satisfied for an award of prejudgment interest are: (1) an underlying monetary obligation; (2) the amount of recovery must be certain or capable of being made certain by calculation; and (3) the right to recover must vest on a particular day.  *James Talcott Const.*, ¶ 40.  However, "the fact that a claim is disputed does not make it uncertain," as long as the damage amount is reduced to certainty on a particular day.  *Safeco Ins. Co. v. Lovely Agency*, 215 Mont. 420, 425, 697 P.2d 1354, 1357 (1985) (citations omitted).  Additionally, the proper accrual date for the calculation of interest on a construction lien is the date the lien is filed.  *James Talcott Const.*, ¶ 39 (citations omitted).

¶30    Here, the underlying monetary obligation was the balance remaining for materials provided to Alvarez's property.  LHC's calculations differed from the court's regarding the $10,000 payment made by Young on October 9, 2003.  LHC credited a portion of the $10,000 to invoices incurred by Young while working on projects undertaken subsequent to the Alvarez project.  The court, however, found that LHC's accounting was "contrary to its stated accounting practice," and therefore applied the full $10,000 to the Alvarez account.  Consequently, the court determined that the balance remaining for materials provided to Alvarez's property was $14,201.58, less than the amount calculated by LHC.

¶31    While the court's conclusion differed from the original figure listed by LHC in its lien, the amount was still capable of being made certain by calculation.  Further, the right

8

to recover vested on November 10, 2003, when the lien was filed. Thus, the court correctly awarded prejudgment interest pursuant to § 27-1-211, MCA.

¶32    **IV. Did the court err in awarding attorney fees?**

¶33    Alvarez does not dispute the court's authority to award attorney fees for the enforcement of a construction lien. Instead, Alvarez contends that LHC should only recover attorney fees in proportion to the percentage of its claimed lien that the court enforced.

¶34    LHC responds that the court properly awarded attorney fees because § 71-3-124(1), MCA, provides for the award of attorney fees in an action to foreclose a lien. Additionally, LHC provided the court with an affidavit in support of the reasonableness of its attorney fees. Alvarez, however, replies that § 71-3-124(1), MCA, only allows attorney fees for a claimant "whose lien is established." As the court found that $14,201.58 was due, as opposed to the $16,568 claimed in LHC's lien, LHC, according to Alvarez, should only receive 86 percent of its attorney fees, in proportion to the ratio of LHC's success to the amount claimed in the lien.

¶35    "The fact that [the claimant] did not receive the entire amount of his claim does not alter" the award of attorney fees mandated by § 71-3-124, MCA. *Donnes v. Orlando*, 221 Mont. 356, 362, 720 P.2d 233, 237 (1986). While § 71-3-124, MCA, does require a claimant's lien be established in order for attorney fees to be awarded, and, in fact, awards attorney fees to a defendant where a lien is not established, the statute does not require a proportional reduction in attorney fees where judgment is for a lesser amount

9

than was claimed in the lien. The District Court thus did not abuse its discretion in awarding attorney fees.

## CONCLUSION

¶36 We uphold the District Court's enforcement of LHC's construction lien against Alvarez's property as well as its award of prejudgment interest and attorney fees and costs.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE

Justice James C. Nelson concurs.

¶37 I reluctantly concur in the Court's decision.

¶38 As the Court notes in ¶ 18 of the Opinion, the lien states that the materials were furnished between August 9 and August 14, 2003. Two invoices admitted in evidence indisputably cover materials and services outside the times claimed in the lien. Specifically, invoice 6521, in the amount of $20,119.00, is for concrete delivered from August 5 to August 8, and invoice 6612, in the amount of $4,475.00, is for flowboys and water trucks delivered on July 29 and 30 and August 5, 7, and 8. Facially, these two invoices are for materials and services delivered prior to the times covered by the lien. The lien is, therefore, deficient on its face under § 71-3-535(3)(g)(i) and (ii), MCA.

10

Unfortunately, because Alvarez did not properly raise this argument in the District Court, that court was and this now Court is in the position of having to enforce a facially deficient construction lien.

¶39 For this reason, I would specifically limit our decision to the facts of this case. To that extent, I concur.

/S/ JAMES C. NELSON