No. 01-115

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 287

MICHAEL LAUDERT,

Petitioner and Respondent,

v.

RICHLAND COUNTY SHERIFF'S

DEPARTMENT and HUMAN RIGHTS

COMMISSION of the STATE OF MONTANA,

Respondents and Appellants.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Kenneth D. Tolliver, Wright Tolliver Guthals, P.C., Billings, Montana

For Respondents:

E. June Lord, Attorney at Law, Great Falls, Montana

Barbara E. Bell, Bell & Marra, P.L.L.C., Great Falls, Montana

Submitted on Briefs: July 12, 2001
Decided: December 20, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The Respondent, Michael Laudert, as the prevailing party in a discrimination suit, petitioned the District Court for the First Judicial District in Lewis & Clark County to award attorney fees and costs from the Appellant, Richland County Sheriff's Department (RCSD). The District Court awarded attorney fees and costs in the full amount claimed. RCSD appeals the District Court's order awarding attorney fees. We affirm the order of the District Court.

¶2 The sole issue on appeal is whether the District Court erred when it awarded the full amount of attorney fees claimed by Laudert.

## FACTUAL BACKGROUND

¶3 Because this is the second time we have considered this case on appeal, the following factual background relates only to the attorney fee dispute. A more detailed statement of the factual background can be found in *Laudert v. Richland County Sheriff's Department*, 2000 MT 218, 301 Mont. 114, 7 P.3d 386 (*Laudert I*).

¶4 In 1992, Laudert filed a discrimination complaint with the Montana Human Rights Commission in which he alleged that the RCSD considered his physical disability when it hired someone else for the county's deputy sheriff position.

¶5 The Hearing Examiner from the Human Rights Commission (HRC) found that RCSD had improperly considered Laudert's health condition during the interview, but found a sufficient non-discriminatory reason for RCSD's decision to hire another applicant. The Hearing Examiner determined that Laudert was not harmed as a result of the unlawful consideration of his disability and denied Laudert's claim for $196,000 in damages.

However, RCSD was ordered to submit a written policy on hiring procedures, with specific guidelines for inquiry into applicant disabilities, and ordered to refrain from making pre-hire inquiries on health conditions unless the applicant voluntarily revealed the disability and RCSD was inquiring about the accommodation needs of the applicant should he or she be hired.

¶6 The Hearing Examiner's findings were upheld on appeal to the HRC. The HRC affirmed both the Hearing Examiner's finding of discrimination and his decision not to award damages.

¶7 Laudert filed a Petition for Judicial Review to the District Court, reasserting his monetary damage claim and seeking reasonable attorney fees pursuant to § 49-2-505(7), MCA. RCSD did not contest the order to submit a written policy before the District Court. Laudert's requests for damages and attorney fees were denied. On appeal to this Court, we reversed the denial of attorney fees, based on our determination that Laudert was the prevailing party even though he had not recovered damages. *Laudert I, ¶* 57. We concluded that his victory was not purely "technical" or "de minimis," because the injunctive relief from RCSD provides the public with a measure of protection from future civil rights violations by RCSD, and the success of Laudert's action serves the broader public interest of eliminating discrimination in employment. *Laudert I*, ¶ 57.

¶8 We remanded to the District Court to determine a reasonable fee award pursuant to § 49-2-505(7), MCA. Laudert's attorneys sought recovery for every hour devoted to the case and expressed their inability to isolate that time related to the affirmative relief which the Hearings Examiner granted. RCSD challenged the recovery of attorney fees for unsuccessful claims and the failure of Laudert's attorneys to segregate the costs and fees attributable to the issues upon which Laudert prevailed. With the legal issues resolved in *Laudert I*, the HRC did not participate in the attorney fee dispute.

¶9 RCSD did not object to either the hourly rate charged by Laudert's attorneys or to any particular costs or time spent by counsel.

¶10 Following a hearing on November 8, 2000, the District Court awarded Laudert's counsel fees for all time expended, citing the testimony of Peter Michael Meloy that the fee was reasonable, this Court's determination in *Laudert I* that Laudert was the prevailing party for purposes of an attorney fee award, and this Court's analysis which formed the basis for that determination in *Laudert I*.

¶11 On January 5, 2001, RCSD appealed the District Court's decision.

## STANDARD OF REVIEW

¶12 We review a district court's award of attorney fees under § 49-2-505(7), MCA, of the Montana Human Rights Act, to determine whether the court abused its discretion. *Laudert I*, ¶ 48. A district court abuses its discretion if its fee award is based on an inaccurate view of the law or a finding of fact is clearly erroneous. *Ihler v. Chisholm*, 2000 MT 37, ¶ 24, 298 Mont. 254, ¶ 24, 995 P.2d 439, ¶ 24.

## DISCUSSION

¶13 Did the District Court err when it awarded the full amount of attorney fees claimed by Laudert?

¶14 The District Court awarded attorney fees to Laudert for the entire lodestar fee, which is arrived at by taking the number of hours reasonably expended and multiplying it by a reasonable hourly rate. The District Court cited a variety of factors for its decision. First, Laudert's expert witness, Peter Michael Meloy, a Helena attorney with extensive discrimination litigation experience, testified that lawyers and law firms do not ordinarily segregate issues for billing purposes, the fees itemized in this case were reasonable, and the focus of civil rights litigation should be the outcome of the entire case, not just issues on which the claimant prevailed. Second, the District Court interpreted our holding in *Laudert I* to mean that as a matter of law, Laudert was entitled to the full amount of attorney fees claimed as the prevailing party. The District Court concluded, based on this Court's analysis, that Laudert should be awarded attorney fees for the entire lawsuit, not just for certain issues.

¶15 RCSD contends that Laudert's counsel should not be entitled to recover at their normal hourly rate for all hours expended in the case because they did not prevail on every claim advanced, and, in fact, achieved only limited success in the case. Appellants claim the only issue on which Laudert prevailed was related to injunctive relief not specifically requested by Laudert, and that the relief was minor compared to the monetary damages requested. RCSD cites a line of United States Supreme Court authority for its ultimate contention that an attorney fee award must be proportionate to the degree of a claimant's success and adjusted downward for limited success.

¶16 The basis for attorney fees in the Montana Human Rights Act is § 49-2-505(7), MCA, which provides in part: "The court in its discretion may allow the prevailing party reasonable attorney fees." We must determine whether the District Court's award of fees was "reasonable" given the extent of Laudert's success as the prevailing party. Given its similarity to fee shifting provisions in federal civil rights statutes (most notably, the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988), it is helpful to examine pertinent federal case law before applying § 49-2-505(7), MCA.

¶17 From the outset, there is a strong presumption, given the rationale behind fee-shifting provisions, that the lodestar fee is a reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* (1986), 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L. Ed.2d 439. Fee-shifting statutes were not designed to be windfalls for attorneys or to replicate the amount a private attorney would receive in other types of litigation, but to enable private parties to retain the legal assistance necessary to seek redress when their rights are violated. *Delaware Valley*, 478 U.S. at 565.

¶18 On the issue of appropriately adjusting the lodestar fee, several United States Supreme Court decisions provide guidance. In *Hensley v. Eckerhart* (1983), 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40, the Court discussed whether a partially prevailing plaintiff may recover attorney fees for legal services provided in pursuit of unsuccessful claims. After determining the lodestar amount, *Hensley* established a two-step approach to address other considerations which may lead a district court to adjust a fee award upward or downward:

> First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley, 461 U.S. at 434.*

¶19 Pursuant to *Hensley*, a court must first determine whether fees were incurred for claims that were distinct or interrelated. Distinctly different claims for relief based on different facts and legal theories which are unsuccessful should be excluded from a reasonable fee calculation. *Hensley*, 461 U.S. at 434-35. Unrelated claims should be treated as if they had been raised in separate lawsuits. *Hensley*, 461 U.S. at 435. However, cases which present only a single claim (like most civil rights cases), involve a common core of facts or are based on related legal theories are not as easily separable. *Hensley*, 461 U.S. at 435. In these situations, the district court should move to the second step and focus

on the overall significance of the relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 435.

¶20 Based on this second consideration, "[t]he result is what matters." *Hensley*, 461 U.S. at 435. An attorney should receive fees for the full services provided where a plaintiff has obtained excellent results. *Hensley*, 461 U.S. at 435. Even if a plaintiff does not prevail on every claim raised, if the plaintiff achieves significant success, all hours reasonably expended on litigation should be included within the attorney fee award. *Hensley*, 461 U.S. at 435. In footnote eleven, the Court explained:

> Nor is it necessarily significant that a prevailing party did not receive all the relief requested. For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.

*Hensley, 461 U.S. at 435 n.11. Where the plaintiff is said to have achieved only "limited success" on the remaining interrelated claims, a reduction to the lodestar may be justified. Hensley, 461 U.S. at 436.*

¶21 Following *Hensley*, the Court elaborated on its approach. The amount of attorney fees does not have to be proportionate to the damages awarded to the plaintiff. *City of Riverside v. Rivera* (1986), 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (holding an attorney fee award of $245,456.25 in a class action where the damages awarded was only $33,350.00 was reasonable). The amount of damages is "only one of many factors that a court should consider in calculating an award of attorney's fees." *Riverside*, 477 U.S. at 574. Important to its determination in *Riverside* were the underlying societal implications of civil rights actions:

> [W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. [citation omitted] . . . Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief.

*Riverside, 477 U.S. at 574-75. The Court also acknowledged Congress' recognition that a plaintiff who*

*obtains relief in a civil rights lawsuit "'does so not for himself alone but also as a 'private attorney general.'" Riverside, 477 U.S. at 575 (citing H.R. Rep. No. 94-1558, at 2 (1973)(quoting Newman v. Piggie Park Enters., Inc. (1968), 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263)).*

¶22 In 1989, the Court held that the critical factor in determining the reasonableness of a fee is the "*degree* of the plaintiff's success in relation to the other goals of the lawsuit." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.* (1989), 489 U.S. 782, 790, 109 S. Ct. 1486, 1492, 103 L.Ed.2d 866. Applying *Hensley*, the Court in *Farrar v. Hobby* held that no fee may be a "reasonable fee" in certain situations. 506 U.S. 103, 115, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (plaintiff seeking a $17 million dollar damage award who was awarded a nominal damage award of $1.00 was declared to be the prevailing party but entitled to no attorney fees).

¶23 This line of cases is helpful but not authoritative as we enforce Montana's Human Rights Act. We agree that *Hensley* is an appropriate starting point for our analysis, but disagree with RCSD's contention that based on *Hensley*, the attorney fees in this case should be adjusted downward.

¶24 As to the issue of whether attorney fees were expended upon distinct or interrelated claims, the only claim presented was that of discrimination. That single claim was based on a common core of facts. Because we conclude there was only one claim, we move to the second, and more difficult, step of the *Hensley* approach and analyze the level of the claimant's success.

¶25 If the claimant achieves "limited" success, a downward adjustment may be in order. However, if the plaintiff achieved significant success, attorney fees should be awarded. We must determine from what perspective success is measured. RCSD contends the lodestar amount should be reduced because Laudert did not receive *personal* relief in the form of damages. In *Garland*, the Supreme Court distinguished between the *plaintiff's* success from the overall outcome of the case. However, in *Laudert I*, we rejected the Supreme Court's requirement in *Garland* that a plaintiff secure a direct benefit when judgment is entered to be a prevailing party because it failed to further the purpose behind the fee shifting provision of the Montana Human Rights Act. *Laudert I*, ¶ 56. For similar reasons, we again reject the *Garland* rationale.

¶26 Civil rights statutes like the Montana Human Rights Act serve to not only benefit individual plaintiffs but also the broader vindication of important civil and constitutional rights. We should examine success not only in terms of the direct benefit to the plaintiff,

which is an important factor, but also whether the claimant's actions further effectuated the purpose for which the statute was enacted. To deny attorney fees simply because there was no award of substantial monetary relief, without also looking at the overall outcome of the case, is short-sighted. The purpose of fee shifting provisions in civil rights laws like the Montana Human Rights Act, is to encourage "meritorious civil rights litigation" and ensure "effective access to the judicial process" for persons with discrimination grievances. *Laudert I*, ¶ 51 (quoting *Hensley*, 461 U.S. at 429 n.2). We agree with the Supreme Court's analysis in *Riverside*, that plaintiffs in civil rights cases play an important role in enforcement as private attorneys general. Denial of attorney fees based simply on lack of personal reward would undermine the purpose for which they are awarded.

¶27 As a result of Laudert's claim, the Hearing Examiner determined that RCSD had engaged in discriminatory conduct, and granted injunctive relief to ensure the elimination of such discrimination in the future. RCSD was ordered to submit a written policy regarding hiring procedures, including specific guidelines on how to inquire into an applicant's disabilities. Such a determination vindicates the rights of other Montana citizens similarly situated to be free from future discriminating treatment. Because of Laudert's initiative and his attorneys' efforts, discriminatory employment practices of this type will no longer occur in Richland County. This result amounts to significant success by Laudert's attorneys and merits a full attorney fee award.

¶28 The ability of civil rights plaintiffs with bona fide claims to attract competent counsel is also of concern. Without attorney fees for successful litigants, meritorious civil rights litigation often would not be brought. *Wagner v. Empire Dev. Corp.* (1987), 228 Mont. 370, 372, 743 P.2d 586, 587. A reluctance to accept civil rights cases already exists, where costs can be high and, generally, the monetary relief is significantly lower than other private law litigation. *Ihler,* ¶ 36 n.1. With increasing cuts to entities like Montana Legal Services, the function of civil rights attorneys to raise meritorious claims is increasingly important. To significantly reduce the attorney fees in this case, despite the success of the discrimination claim against RCSD, would further hamper the ability of Montana citizens to attract counsel with the time and expertise necessary to enforce their civil rights. *See Ihler*, ¶ 39.

¶29 Therefore, we conclude that Laudert achieved the level of success necessary to support an award of the full amount of fees claimed and the District Court did not err by the amount of fees awarded.

¶30 In addition, Laudert requests that it be awarded attorney fees and costs on appeal. Costs on appeal in civil actions are automatically awarded to the prevailing party pursuant to Rule 33, M.R.App.P. As to attorney fees, we stated in *Ihler*:

> As the prevailing party in the underlying civil rights action, [the plaintiff] is entitled to reimbursement of fees reasonably incurred, whether they are fees incurred in the original civil rights trial and appeal, fees incurred in proving those fees, or fees incurred in defending the district court's fee award.

*Ihler, ¶ 67 (quoting Ustrak v. Fariman (7th Cir. 1988), 851 F.2d 983, 990). Accordingly, we hold that Laudert is entitled to costs and reasonable attorney fees incurred on appeal.*

¶31 We affirm the order of the District Court and remand to the District Court for a determination of attorney fees incurred on appeal.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER

Justice Patricia O. Cotter concurs.

¶32 I concur in the result reached by the majority. Although I find ample support in the record for the result reached here, I would not categorically hold, as the majority does at ¶ 27, that the result obtained by Laudert's attorneys ". . . merits a full attorney fee award." Rather, I would simply hold that the District Court did not abuse its discretion when it awarded a full attorney fee to Laudert. In all other respects, I concur.

/S/ PATRICIA COTTER