DA 09-0356

IN THE SUPREME COURT OF THE STATE OF MONTANA

2010 MT 1

JTL GROUP, Inc.,

Plaintiff and Appellee,

v.

NEW OUTLOOK, LLP,

Defendant and Appellant.

_____

NEW OUTLOOK, LLP,

Plaintiff and Appellant,

v.

JTL GROUP, Inc. and WEAVER GRAVEL, Inc.,

Defendants and Appellees.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 2005-558B
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Darrel L. Moss, Moss & Associates, P.C., Missoula, Montana

For Appellee:

Daniel D. Johns, Scott D. Hagel, Crowley Fleck, PLLP,
Kalispell, Montana

Submitted on Briefs:  December 10, 2009

Decided:  January 5, 2010

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    New Outlook, LLP (New Outlook), appeals from a grant of partial summary judgment, an order of judgment following a bench trial, and an award of attorney fees in the Eleventh Judicial District Court. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    In 2004, New Outlook was the owner and developer of a five-lot residential subdivision near Kalispell, Montana, known as Cheery Lynn Sites. Sometime in the summer of 2004, Ralph K. Hemp, a partner or member of New Outlook, asked Bruce Weaver, the vice president of Weaver Gravel, Inc. (Weaver Gravel), to inspect the subdivision and submit a bid for improvements to the subdivision. These improvements consisted of the construction of an internal road and cul de sac, installation of water, sewer, and other utilities, and the construction of elevated gravel building pads and driveways.

¶3    Weaver Gravel ultimately contracted with JTL Group, Inc. (JTL), to perform the work on the subdivision, and a bid was prepared by JTL. The bid was submitted in the name of Weaver Gravel. The bid called for material and services to be paid for according to the number of units of each of the components of construction improvements that were provided to the subdivision. New Outlook accepted the bid. JTL installed road base material, asphalt paving, water lines, sewer lines and other utilities, and concluded its work on August 27, 2004. After completion, a dispute arose which primarily concerned the quantity of "pit run" gravel installed as base material beneath the subdivision road.

¶4 On October 14, 2004, JTL filed a construction lien on the property comprising the subdivision in the amount of $116,417.57. In May and early July 2005, JTL agreed to execute a partial release of the construction lien as it pertained to lots 3, 4, and 5, of the subdivision, in exchange for payment from New Outlook. The partial release allowed New Outlook to sell these lots. These payments reduced JTL's lien claim to $50,017.57.

¶5 In July 2005, JTL filed the instant suit against New Outlook, claiming breach of contract, unjust enrichment, and seeking to foreclose on its construction lien. New Outlook filed a counterclaim for slander of title against JTL. New Outlook also filed a separate action against Weaver Gravel for breach of contract and breach of warranty. Weaver Gravel in turn filed third-party claims against JTL, seeking indemnification. JTL and Weaver Gravel later resolved these third-party claims.[1] Prior to trial, New Outlook waived its breach of warranty claim against Weaver Gravel.

¶6 The statutes governing construction liens are found in Title 71, chapter 3, part 5 of the Montana Code Annotated. Section 71-3-531(2), MCA, states that "[a] person who may claim a construction lien pursuant to this part shall give notice of the right to claim a lien to the contracting owner in order to claim a lien." Sections 71-3-531(3) through (6), MCA, describe these notice requirements with particularity. JTL did not file a notice of its right to claim a construction lien upon New Outlook. However, § 71-3-531(1), MCA

---

[1] JTL, through its counsel, ultimately provided a defense for Weaver Gravel against the counterclaims asserted by New Outlook.

(2003),[2] provides several exceptions to this notice requirement. This section reads as follows:

> The following are not required to give notice of the right to claim a lien as required by this section:
>     (a) an person who furnishes services or materials directly to the owner at the owner's request;
>     (b) a wage earner or laborer who performs personal labor services for a person furnishing any service or material pursuant to a real estate improvement contract;
>     (c) a person who furnishes services or materials pursuant to a real estate improvement contract that relates to a dwelling for five or more families; and
>     (d) a person who furnishes services or materials pursuant to a real estate improvement contract that relates to an improvement that is partly or wholly commercial in character.

¶7 Prior to trial, New Outlook sought summary judgment on JTL's failure to file notice of a right to claim a construction lien. New Outlook argued that JTL's failure to do so rendered the construction lien unenforceable. JTL sought partial summary judgment that its construction lien was valid. JTL argued that the exceptions under § 71-3-531(1)(a) and (d), MCA, applied and that it was not required to file a notice of its right to claim a lien in this case.

¶8 On November 5, 2007, the District Court denied New Outlook's motion and granted JTL's motion for partial summary judgment, holding that JTL was exempt from giving New Outlook notice of its right to claim a lien under § 71-3-531(1)(d), MCA. The District Court held that the purpose of the notice requirements in § 71-3-531(1), MCA, was to protect the individual homeowner, who is likely "not savvy" when it comes to

---

[2] Because JTL filed its construction lien in 2004, the 2003 version of the MCA applies in this case. In 2007, the Legislature amended portions of § 71-3-531(1), MCA. The amendments do not affect our disposition of this appeal.

5

construction contracts and the payments of accounts and liens. The District Court determined these policy concerns were not present since New Outlook is a real estate developer. In addition, the District Court concluded that it would look to the nature of the enterprise to determine whether it is "commercial" in character. In this case, the improvement for which JTL filed its lien was not a house or dwelling, but was instead a road, which could not be characterized as residential. Accordingly, notice of the right to claim the lien was not required and JTL's attempts to foreclose on its construction lien could go forward.

¶9     A bench trial on the parties' claims was scheduled to commence on December 3, 2007. On November 29, New Outlook filed a motion to disqualify the presiding judge, the Hon. Katherine R. Curtis, for cause. The trial was postponed by an order of this Court while a substitute judge was brought in and the motion was resolved. The motion was ultimately decided against New Outlook on February 5, 2008, and attorney fees and costs were awarded to JTL following a hearing.

¶10     The bench trial was held on June 23-25, 2008. The District Court issued findings of fact, conclusions of law, and an order for partial judgment on August 1, 2008. In its findings, the District Court determined that New Outlook conceded that it owed $21,665.57 to Weaver Gravel, but disputed the $50,017.57 claimed by JTL. The District Court determined that the money claimed was actually owed to JTL and not Weaver Gravel, because it was JTL that actually performed the work and filed a construction lien on the subject property.

6

¶11 The District Court noted that JTL and New Outlook presented conflicting testimony at trial regarding the amount of pit run gravel supplied by JTL. Ultimately, the District Court determined that JTL failed to meet its burden of proof with regard to the additional amount claimed in its lien over and above the amount New Outlook conceded that it owed. The District Court further found that JTL did not file its lien in bad faith or with actual malice, and did not deliberately inflate the amount it claimed it was owed on the lien.

¶12 In its conclusions of law, the District Court determined that JTL's lien was valid under *LHC, Inc. v. Alvarez*, 2007 MT 123, 337 Mont. 294, 160 P.3d 502. The District Court further concluded that JTL had complied with all the procedural requirements of Montana's construction lien statutes, and that it was owed $21,665.57, the amount which New Outlook conceded it owed for the work done on the subdivision. The District Court also awarded JTL prejudgment interest. Further, the District Court dismissed New Outlook's slander of title claim against JTL since it concluded that JTL's lien was valid.[3]

¶13 The District Court also denied New Outlook's claim for breach of contract against Weaver Gravel. The District Court concluded that this claim was based on a prayer for indemnification for any amounts that New Outlook might be ordered to pay over and above the contract amount owed to Weaver Gravel. Since the District Court found that no extra amount was owed by New Outlook, it denied New Outlook's breach of contract claim against Weaver Gravel.

---

[3] The District Court also denied New Outlook's claims for punitive damages against JTL. This ruling has not been appealed.

¶14 The District Court also awarded JTL and Weaver Gravel costs and reasonable attorney fees. JTL and Weaver Gravel were both represented by the same attorneys. Pursuant to the District Court's order, JTL and Weaver Gravel submitted a bill of costs and an affidavit in support of an award of attorney fees. New Outlook filed objections. The parties were given an opportunity to request a hearing on attorney fees on or before JTL/Weaver Gravel's response to New Outlook's objections were due, or the hearing was deemed waived. New Outlook did not timely request a hearing.

¶15 On April 29, 2009, the District Court entered findings of fact, conclusions of law, and its order on attorney fees and costs. JTL's affidavits sought a total of $119,072.50 in attorney fees. The District Court determined in its findings that the affidavits itemized the hourly rates of the attorneys, contained descriptions of the work performed and hours expended in performing the work, thus representing the "lodestar fee" pursuant to *Laudert v. Richland Co. Sheriff's Dept.*, 2001 MT 287, 307 Mont. 403, 38 P.3d 790.

¶16 New Outlook raised several objections to JTL's claimed amount of attorney fees. New Outlook argued that much of the work of JTL's counsel was excessive, redundant, or otherwise unnecessary, and that the time entries were either duplicative or not sufficiently detailed. New Outlook also argued that JTL improperly sought attorney fees for taking and defending depositions which were not used at trial, as well as non-recoverable fees for expert witnesses. Further, New Outlook contended that JTL was not entitled to attorney fees incurred in responding to New Outlook's motions, and may not recover "fees for fees"; i.e., attorney fees incurred in proving the right to recover reasonable attorney fees.

8

¶17 The District Court rejected most of New Outlook's arguments regarding the reasonableness of JTL's claimed attorney fees. The District Court determined that the billing statements were sufficiently detailed and not for the most part excessive or redundant. The District Court also determined that New Outlook had failed to present evidence or expert witness testimony in support of its arguments against the award, and had failed to overcome the strong presumption that JTL's lodestar calculation was reasonable. However, the District Court did conclude that some amounts billed were unwarranted and eliminated approximately $7,600 in claimed fees.

¶18 The District Court then evaluated the reasonableness of JTL's attorney fees under the following seven-factor test described in *Plath v. Schonrock*, 2003 MT 21, 314 Mont. 101, 64 P.3d 684:

> The reasonableness of attorney fees must be ascertained under the facts of each case. This Court has stated that in determining what constitutes reasonable attorney fees, the following factors should be considered as guidelines: (1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys.

*Plath*, ¶ 36 (citing *Morning Star Enterprises, Inc. v. R.H. Grover, Inc.*, 247 Mont. 105, 114, 805 P.2d 553, 558 (1991)).

¶19 The District Court carefully analyzed the factors supporting each element of the test, and concluded the claimed fees were reasonable under *Plath*. For purposes of this Opinion, we deem it unnecessary to recount the entire analysis. The District Court also

9

noted that § 71-3-124(1), MCA (2003)[4], provides for a mandatory award of attorney fees to the prevailing party in a construction lien case. This statute reads as follows:

> In an action to foreclose any of the liens provided for by part 3, 4, 5, 6, 8 or 10 of this chapter, the court shall allow as costs the money paid and attorney fees incurred for filing and recording the lien and **reasonable attorney fees in the district and supreme courts.** The costs and attorney fees must be allowed to each claimant whose lien is established, and the reasonable attorney fees must be allowed to the defendant against whose property a lien is claimed if the lien is not established.

(Emphasis added.)

¶20 In its conclusions of law, the District Court concluded that JTL was entitled to its recoverable costs under Title 25, chapter 10, part 2, and that New Outlook had waived its objections to costs because its objections were untimely. Similarly, the District Court concluded that New Outlook waived its right to a hearing on attorney fees by not filing a request for a hearing until approximately 3 months after the final deadline to request a hearing had passed.

¶21 Under § 71-3-124(1), MCA, attorney fees are available to a party establishing a construction lien for "reasonable attorney fees in the district and supreme courts." The District Court concluded that attorney fees incurred in the taking and defending of depositions were covered by this statute, even if not used at trial. Similarly, the District Court determined that fees incurred in responding to New Outlook's various motions were also covered under § 71-3-124(1), MCA.

---

[4] The 2007 Legislature also made changes to this statute which are not relevant to the instant appeal.

¶22 Finally, the District Court concluded that it was not possible to segregate the attorney fees incurred among the construction lien foreclosure action, and the other claims asserted in this case. Because JTL, as the prevailing party, was entitled to attorney fees under *Blue Ridge Homes, Inc. v. Thein*, 2008 MT 264, 345 Mont. 125, 191 P.3d 374, the District Court awarded JTL most of the fees claimed. In this connection, the District Court concluded that New Outlook had failed to produce any evidence or expert testimony sufficient to overcome the "strong presumption" that the lodestar amount claimed by JTL was reasonable. *See Laudert*, ¶ 17. Based on these conclusions, the District Court determined that JTL was entitled to an award of $111,413.50 in attorney fees and $791.50 in costs.

¶23 After judgment was entered, New Outlook moved to amend or alter the judgment. New Outlook contended that JTL had failed to offer sufficient evidence to establish the construction lien, and that much of the evidence upon which JTL relied was inadmissible hearsay. The District Court denied the motion, noting that New Outlook did not object to the evidence which it was now contesting. The District Court noted that most of the objections put forth by New Outlook in its motion to alter or amend were being raised post-trial for the first time.

¶24 New Outlook now appeals from these decisions of the District Court, presenting the following issues on appeal:

¶25 **Issue One:** *Did the District Court err in concluding that JTL was not required to give New Outlook notice of its right to claim the construction lien prior to its filing?*

¶26 **Issue Two:** *Did the District Court err in concluding that JTL had established the construction lien in this case?*

¶27 **Issue Three:** *Did the District Court err in denying New Outlook's claim for breach of contract against Weaver Gravel?*

¶28 **Issue Four:** *Did the District Court abuse its discretion in awarding JTL attorney fees and costs?*

## STANDARD OF REVIEW

¶29 We review a district court's ruling on summary judgment de novo. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 123, ¶ 13, 350 Mont. 184, 206 P.3d 919.

¶30 We review findings of fact in a civil bench trial to determine if they are supported by substantial credible evidence. *DeNiro v. Gasvoda*, 1999 MT 129, ¶ 9, 294 Mont. 478, 982 P.2d 1002. This Court "must view the evidence in the light most favorable to the prevailing party." *DeNiro*, ¶ 9. Conclusions of law in this context are also reviewed for correctness. *DeNiro*, ¶ 9.

¶31 We review for abuse of discretion a district court's denial of a motion to alter or amend a judgment pursuant to M. R. Civ. P. 59(g). We also review for an abuse of discretion a district court's order granting or denying attorney fees. *Blue Ridge Homes*, ¶ 20.

¶32 **Issue One:** *Did the District Court err in concluding that JTL was not required to give New Outlook notice of its right to claim the construction lien prior to its filing?*

12

¶33    In its grant of partial summary judgment, the District Court determined that JTL was not required to give notice to New Outlook of its right to claim a construction lien by virtue of § 71-3-531(1)(d), MCA. *See Opinion*, ¶¶ 6-8. New Outlook claims this was error. It argues the District Court erred when it determined that JTL was exempted from the notice requirements in § 71-3-531(2), MCA. New Outlook argues that, under the construction lien statutes, the District Court was required to look to the nature and character of the improvement to determine if it was "commercial in character." Instead of looking to the use of the improvement, the District Court considered the subjective intent of the developer in having the improvements constructed to ascertain whether the improvement was "commercial" or "residential" in character. Here, New Outlook argues it is undisputed that the services and materials provided by JTL were for improvements in a residential subdivision with no commercial use. Thus, the improvements was residential, not commercial, in character. By relying upon the fact that New Outlook intended to sell the subdivision for a profit in order to conclude that the improvements were commercial, New Outlook argues the District Court wrongly considered the subjective intent of the developer and in effect altered the plain meaning of the statute.

¶34    JTL urges us to affirm. JTL contends that the infrastructure improvements it provided constituted improvements with an undeniable commercial purpose—i.e., the creation of a sales inventory of buildings lots. In this connection, JTL argues these specific improvements are not conceptually and substantively distinguishable from the construction of a grocery store or office complex for later resale. JTL argues that the character of a real estate development for purposes of the construction lien statutes

13

cannot be dissociated from the commercial nature of the venture within which it was created.

¶35 JTL also draws the Court's attention to the circumstances surrounding the creation of the construction lien which attached to the New Outlook subdivision. JTL notes that under § 71-3-535(5), MCA, a construction lien attaches at the commencement of the work. When JTL provided services and materials, the subdivision was devoid of any residential improvements and no portion was owned by individual landowners. Further, the property was held by a partnership that was developing the subdivision for a profit. Following the completion of JTL's work, the property at issue contained nothing more than "empty building lots with newly installed roadways, water, sewer, and other utilities, placed in the stream of commerce for immediate resale." JTL contends that nothing in the gravel, asphalt, or water and sewer lines is distinctly "residential," or non-commercial, in character, and that the District Court did not err in concluding that the exception in § 71-3-531(1)(d), MCA, applies.

¶36 We agree with JTL and affirm the District Court. We interpret statutes according to their plain language; if the language of the statute is clear on its face, this Court looks no further. *Haney v. Mahoney*, 2001 MT 201, ¶ 7, 306 Mont. 288, 32 P.3d 1254. Section 71-3-531(1)(d), MCA, exempts a party seeking a construction lien from the notice requirements in § 71-3-531(2), MCA, if the "services or materials pursuant to a real estate improvement contract . . . [relate] to an improvement that is partly or wholly commercial in character." Here, JTL provided "pit run" gravel for an internal subdivision road. As JTL correctly notes, its construction lien attached at a time when

there were no residential improvements and no property owned by individual homeowners. Further, as noted by the District Court, the improvement for which JTL filed its lien was not a house or dwelling, but was instead a road, which could not be characterized as "residential" in nature.

¶37 For the foregoing reasons, the improvements provided by JTL were "partly or wholly commercial in character," and therefore the exception to the notice requirement in § 71-3-531(1)(d), MCA, clearly applies. Thus, we affirm the District Court regarding this issue.

¶38 **Issue Two:** *Did the District Court err in concluding that JTL had established the construction lien in this case?*

¶39 New Outlook argues that the District Court erred when it concluded that JTL had established a valid construction lien. JTL argues that the construction lien statement filed by JTL and admitted into evidence does not establish when JTL furnished materials and services, and is based on nothing more than inadmissible hearsay and self-serving statements made by JTL's witnesses at trial. New Outlook also argues that JTL failed to establish at trial that it provided service on New Outlook of its construction lien. New Outlook further argues that the property described in the construction lien does not contain a description of the property sufficient to identify it as required under § 71-3-535(3)(b), MCA.

¶40 JTL offers a persuasive counterargument to which New Outlook offers no reply.[5] First, JTL notes the District Court's finding that New Outlook essentially conceded that it

---

[5] New Outlook did not file a reply brief on appeal.

15

owed JTL $21,665.57 for materials it provided. Second, it notes that the issues now raised by New Outlook were never raised in the pretrial order, or preserved for appeal. Instead, New Outlook raised them for the first time in its post-trial Rule 59(g) motions. JTL further observes that the construction lien, which New Outlook now claims is inadmissible hearsay, was admitted into evidence *without objection*. For these reasons, JTL argues that New Outlook's arguments should be rejected under *Alvarez*. Alternatively, JTL contends that it did in fact present sufficient evidence to support the construction lien.

¶41 In its denial of New Outlook's Rule 59(g) motions, the District Court noted that New Outlook had failed to raise these same issues prior to trial, and therefore waived them. We agree. The arguments now presented by New Outlook were raised for the first time in post-trial motions, and are therefore waived. *Alvarez*, ¶¶ 20-21. Similarly, New Outlook has waived its ability to challenge the admissibility of JTL's construction lien statement, since it failed to object to its admissibility at trial. *See City of Helena v. Kortum*, 2003 MT 290, ¶ 16, 318 Mont. 77, 78 P.3d 882. Therefore, we affirm the District Court on this issue.

¶42 **Issue Three:** *Did the District Court err in denying New Outlook's claim for breach of contract against Weaver Gravel?*

¶43 New Outlook's claim for breach of contract against Weaver Gravel was based on the prospect that it might have to pay JTL an amount in excess of the $21,665.57 that New Outlook conceded it owed. Having determined that New Outlook did not owe anything over and above this amount, the District Court denied the breach of contract

16

claim. New Outlook claims this was error, complaining that it now owes attorney fees and prejudgment interest in excess of $157,000 as a result of Weaver Gravel's breach of contract. New Outlook argues that the District Court's decision should be reversed so that the breach of contract claims can now go forward.

¶44    JTL urges us to affirm. JTL notes that New Outlook made it "abundantly clear" in the pretrial order that the basis of its breach of contract claim was the prospect that it might have to pay JTL some amount in excess of what it conceded it owed to Weaver Gravel. Since the District Court found that it did not owe an amount in excess of this figure, it properly dismissed the breach of contract claim. JTL contends that the additional amounts now owed by New Outlook for attorney fees and prejudgment interest are not relevant to the breach of contract claim it posited at trial.

¶45    We agree with JTL and affirm the District Court. The additional amounts now owed by New Outlook are based on attorney fees and prejudgment interest and are not relevant to the breach of contract claims it presented at trial. The District Court did not err in rejecting those claims once it determined that New Outlook did not owe Weaver Gravel an amount in excess of $21,665.57.

¶46    **Issue Four:** *Did the District Court abuse its discretion in awarding JTL attorney fees and costs?*

¶47    Finally, New Outlook contends that the District Court erred in awarding attorney fees to JTL. First, New Outlook argues that JTL failed to present any evidence or third-party expert testimony to support an award of attorney fees. Instead, New Outlook contends that JTL relied upon the "self-serving" affidavits of its attorneys to establish an

17

award of attorney fees. Second, New Outlook asserts that many of the fees incurred by JTL in this case were unrelated to the construction lien, and should not have been awarded by the District Court. Third, New Outlook argues that attorney fees incurred in connection with the taking and defending of depositions, as well as those fees related to the presentation of expert testimony, are not recoverable in this case. Fourth, New Outlook generally contends that JTL's claim of over 190 hours of trial preparation attorney fees in October and November 2007 is excessive. Fifth, New Outlook claims that the District Court erred in awarding JTL attorney fees it incurred in establishing its right to attorney fees—i.e., "fees for fees." For these reasons, New Outlook argues the District Court's award of attorney fees should be reversed.

¶48 JTL contends that the District Court did not abuse its discretion in awarding attorney fees, and that its decision should be upheld. JTL notes that New Outlook filed untimely objections to the costs, did not request a hearing on attorney fees, and did not present any expert testimony or evidence to overcome the presumption that the lodestar calculation was correct.

¶49 JTL also argues there was no injustice in the District Court's decision. JTL maintains that New Outlook unnecessarily prolonged this case, engaged in discovery abuse, filed numerous motions, and set forth numerous contentions in the pretrial order which JTL had to spend time analyzing and preparing for, even though New Outlook did not litigate many of those contentions at trial. Further, JTL claims that New Outlook indentified several hundred pages of documents, and approximately 112 exhibits, which it had to analyze and consider in order to be properly prepared for trial.

18

¶50    JTL also contends that the District Court correctly determined that all of the claims in this case were inextricably intertwined, involving the same facts and same witnesses, and that it was not possible to segregate the time among claims. Under *Blue Ridge Homes*, JTL argues the award of attorney fees was appropriate.

¶51    We review an award of attorney fees for an abuse of discretion. *Blue Ridge Homes*, ¶ 20. An abuse of discretion occurs when the district court acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. *James Talcott Const., Inc. v. P & D Land Enterprises*, 2006 MT 188, ¶ 62, 333 Mont. 107, 141 P.3d 1200.

¶52    We agree with JTL that the District Court did not abuse its discretion when it awarded attorney fees. The construction lien statutes contain fee-shifting provisions for the party which prevails in establishing a lien. As we stated in *Laudert*, "there is a strong presumption, given the rationale behind fee-shifting provisions, that the lodestar fee is a reasonable fee." *Laudert*, ¶ 17 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 3098 (1986)). Here, the lodestar fee established by JTL was entitled to this presumption of reasonableness, and New Outlook failed to produce sufficient evidence to overcome this presumption. As noted by JTL, New Outlook waived its right to a hearing on attorney fees, and presented no expert testimony or evidence to demonstrate that JTL's lodestar calculation was unreasonable.

¶53    Furthermore, the District Court correctly determined that the claims in this case were intertwined, and acted within its discretion when it awarded JTL attorney fees based on the construction lien statutes. *See Blue Ridge Homes*, ¶ 78 (noting that a district court

may consider intertwined claims, involving the same factual and legal issues, for purposes of calculating attorney fees and costs). Similarly, the award of attorney fees incurred in the taking and defending of depositions was reasonable under § 71-3-124(1), MCA, as this statute allows the party who establishes a construction lien to recover fees incurred "in the district and supreme courts." Finally, we specifically held in *Blue Ridge Homes*, that "fees for fees" are recoverable in actions which establish a construction lien. *Blue Ridge Homes*, ¶ 81. In sum, New Outlook has failed to demonstrate how, under the circumstances of this case, the District Court's award of attorney fees was arbitrary, unreasonable, or resulted in substantial injustice to New Outlook.

## CONCLUSION

¶54 The District Court did not err in concluding that JTL was exempt from giving New Outlook notice of its right to file a construction lien in this case, nor did it err in determining that JTL successfully established a construction lien. Further, the District Court did not err in denying New Outlook's breach of contract claims against Weaver Gravel. Finally, we conclude the District Court did not abuse its discretion in awarding attorney fees. Affirmed.

/S/ PATRICIA O. COTTER

We concur:

/S/ MIKE McGRATH
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON

20