JUSTICE WHEAT
delivered the Opinion of the Court.
*232 ¶1 John and Hazel Conway moved for summary judgment, asserting that a building restriction line depicted on Anita Miller’s lot on the Redgate Vista subdivision plat restricted where she could build her garage. The Twentieth Judicial District Court, Lake County, granted the Conways’ motion for summary judgment, concluding that the plain language of the plat clearly restricted the building’s location, and ordered Miller to remove a portion of her garage.
BACKGROUND
¶2 John and Hazel Conway own Lots 5 and 6 of Redgate Vista, a platted subdivision in Lake County, Montana. Anita Miller owns the adjoining Lots 7 and 8. The plat of the Redgate Vista subdivision shows a line running north and south across Miller’s Lot 7 labeled “building restriction line.” The following figure is a copy of the plat showing the configuration of the lots and the building restriction line.
[[Image here]]
¶3 In 1973, Red Gate Inc. surveyed and platted the Redgate Vistasubdivision. All of the deeds in the chain of title for Lots 5, 6, 7, and 8 expressly referred to the plat depicted above. None of the deeds in the Conways’ chain of title mention any easements or the building restriction line. The building restriction line is mentioned in Miller’s chain of title. The deed from Red Gate, Inc. to Leland and Judy Hylsop and the deed from the Hylsops to the Walls contain the language: “Also, subject to a building restriction line on Lot Seven (7) according to the Plat of Red Gate Vista.” The deed from the Walls to Smudge, Inc. conveys the property in fee simple, “except easements, restrictions, *233 reservations and conditions of record.” The deed from Smudge, Inc. to the Youngs has no mention of an easement or building restriction line. The deed from the Youngs to Alvie and Anita Miller conveys the property “subject to and together with rights of way and easements established or of record.” Finally, the quitclaim deed from Alvie Miller to Anita Miller does not mention an easement or a building restriction line.
¶4 Exception 11 in Miller’s title insurance policy to Lots 7 and 8 is the “building restriction line across said Lot 7, as shown on the Plat of Redgate Vista on file in the office of the Clerk and Recorder of Lake County, Montana.” Miller admitted that the closing documents made her aware of the building restriction line prior to purchasing Lot 7.
¶5 In April 2008, Miller began constructing a garage located on both sides of the building restriction line. In May, the Conways filed their complaint, requesting in pertinent part that the court enjoin Miller from finishing construction of her garage and order her to remove the portion that violated the building restriction line. In November, the Conways filed a motion for summary judgment, arguing that a reasonable interpretation of the plain language “building restriction line” on the plat led to the conclusion they were entitled to judgment as a matter of law because it was undisputed that the garage was located on both sides of the building restriction line.
¶6 Miller filed a cross-motion for summary judgment and asserted that, although the Conways failed to frame their argument as enforcement of an easement, this is in fact what they sought from the court. Miller argued that because the Conways were strangers to the deed, an easement was not created because it failed to have express language of the grantor’s intent to create an easement. Relying on Blazer v. Wall, 2008 MT 145, 343 Mont. 173, 183 P.3d 84, Miller also asserted that the language “building restriction line” did not create an easement because it did not identify the dominant and servient tenement nor did it give the servient tenement knowledge of its use and necessity.
¶7 The District Court granted summary judgment in favor of the Conways. Without addressing whether an easement was created, the court adopted the Conways’ arguments and concluded that, “[Miller] herself is charged with knowledge of the building restriction by virtue of the recorded plat and the special exception to the title policy obtained upon the purchase of her Lot 7.” The court rejected Miller’s argument regarding identification of the dominant and servient tenement because it was not supported by authority. The court also *234 rejected her argument regarding the use and necessity of the building restriction line because it had “no difficulty concluding from the face of the plat that the restriction is to prohibit buildings on that portion of Lot 7 west of [the building restriction] line.”
¶8 On appeal, Miller reasserts her argument that the language “building restriction line” is not adequate to create an easement because it does not identify a dominant and servient tenement and does not give her knowledge of the use and necessity of the easement. She also claims that the Conways extinguished the easement when they built their privacy fence because the fence obstructs their view, and the Conways contend the purpose of the building restriction is to protect their view. Finally, Miller argues that removing her garage is an idle act prohibited by § 1-3-223, MCA, because the Conways’ view would still be obstructed by her house even if her garage was removed.
¶9 The Conways argue that Blazer is distinguishable and the language “building restriction line” clearly gives Miller notice that she cannot build on that portion of Lot 7 and that the District Court’s ruling and order to remove the garage was correct.
¶10 We restate the issues on appeal as:
¶11 Issue 1: Did the plat’s depiction of the “building restriction line” create a negative easement?
¶12 Issue 2: Did the Conways extinguish the negative easement by building a privacy fence?
¶13 Issue 3: Did the District Court err in ordering removal of Miller’s garage because it would be a waste of resources?
STANDARD OF REVIEW
¶14 We review a district court’s denial of motions for summary judgment de novo. Tacke v. Energy West, Inc., 2010 MT 39, ¶ 16, 355 Mont. 243, 227 P.3d 601. We review a district court’s conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. JTL Group, Inc. v. New Outlook, LLP, 2010 MT 1, ¶ 29, 355 Mont. 1, 223 P.3d 912.
DISCUSSION
¶15 Issue 1: Did the plat’s depiction of the ‘building restriction line” create a negative easement?
¶16 Miller’s argument that the description on the plat was insufficient to create an easement is two-fold. First, she asserts that no easement was created because the language “building restriction line” does not clearly and unmistakably communicate the grantor’s intent to create *235 an easement, according to our easement-by-reference rules set forth in Blazer. Second, she contends that the Conways are strangers to the deed and, as such, the easement-by-reference doctrine does not apply. Miller claims that because the deed did not have any language creating an easement, none was created.

A. The developer’s intent to create a negative easement is clear and unmistakable.

¶17 An easement by reservation must arise from the written documents of conveyance. Halverson v. Turner, 268 Mont. 168, 172, 885 P.2d 1285, 1288 (1994).
A “negative easement” is one the effect of which is not to authorize the doing of an act by the person entitled to the easement, but merely to preclude the owner of the land subject to the easement from doing that which, if no easement existed, he would be entitled to do.
Northwestern Improvement Co. v. Lowry, 104 Mont. 289, 301, 66 P.2d 792, 794 (1937). A grantor may expressly reserve an easement over granted land in favor of retained land by using appropriate language in the instrument of conveyance. Blazer, ¶ 27. An easement may be expressly reserved by referring in the instrument of conveyance to a recorded plat or certificate of survey on which the easement is adequately described. Id. When land is sold with reference to a properly recorded plat, the plat becomes part of the document conveying the interest in land. Section 76-3-304, MCA; Benson v. Pyfer, 240 Mont. 175, 179, 783 P.2d 923, 925 (1989).
¶18 None of the deeds at issue contain language creating a negative easement. The parties do not dispute this matter. The parties also do not dispute that the deeds expressly refer to a recorded plat. Thus, we look to the description on the plat rather than the language of the deed to determine if an easement was created and is enforceable.
¶19 An easement created by reference in an instrument of conveyance to a plat is an express easement. The intent to create an easement must be clearly and unmistakably communicated on the referenced plat using labeling or other express language. Blazer, ¶ 43. For an easement to be created by reference to a plat, it must be adequately described by being clearly depicted and labeled on the plat. Id. An easement has not been adequately described “when the identity of the dominant tenement has been omitted and cannot be ascertained from the documents of conveyance.” Blazer, ¶ 51. In other words, an easement is not adequately described if the identities of the dominant and servient tenements are not ascertainable with “reasonable *236 certainty” from the referenced plat or certificate of survey. Blazer, ¶ 54.
¶20 An adequate description of an easement also gives the servient tenement knowledge of its use or necessity. Blazer, ¶ 36. For example, we held that the depiction and labels of a “public utility easement” and a “private roadway easement” on a certificate of survey was adequate to create an easement by reference. Bache v. Owens, 267 Mont. 279, 286, 883 P.2d 817,822 (1994). And again in Halverson, we held that an easement labeled “30-foot road easement” between two tracts of land depicted on a certificate of survey was sufficient to create an easement by reference. Halverson, 268 Mont. at 174, 885 P.2d at 1289.
¶21 On the other hand, an easement may not be inferred or implied from an unlabeled or inadequately described depiction appearing on a plat or certificate of survey. Blazer, ¶ 43. For example, in Tungsten Holdings, Inc. v. Parker, the plat depicted a narrow, meandering tract of land labeled “lot 34.” Tungsten Holdings, Inc. v. Parker, 282 Mont. 387, 388-89, 938 P.2d 641, 641-42 (1997). We reversed the district court’s conclusion that a road easement was created, explaining that “easements by reservation must be created or reserved in writing.” Tungsten Holdings, 282 Mont. at 390, 938 P.2d at 643. Because nothing specifically identified lot 34 as a roadway, we held no easement was created. Id.
¶22 Finally, while a plat’s or certificate of survey’s description are strong considerations in determining the grantor’s intent to create an easement, we must consider the entire instrument, including both the deed and the entire plat. “The modern conception of conveyancing, however, seeks to ascertain the intent of the grantor from a consideration of the entire instrument, without regard to the position of the several clauses ....” City of Missoula v. Mix, 123 Mont. 365, 370, 214 P.2d 212, 215 (1950).
¶23 While Miller admits she knew about the existence of the building restriction line before she bought Lot 7, she contends that the description is inadequate to create an easement because no dominant and servient tenement is identified nor can she decipher the use or necessity of the negative easement. She claims the language is too ambiguous to determine what type of building is restricted and the description fails to give the purpose of the restriction.
¶24 Citing Pearson v. Virginia City Ranches Ass’n, 2000 MT 12, 298 Mont. 52, 993 P.2d 688, the Conways respond that because the subdivision plat of Redgate Vista was incorporated into all of the deeds in Miller’s and the Conways’ chain of title, Miller is bound by the *237 building restriction line. According to the Conways, the right to enforce the negative easement created by the building restriction line belongs to all affected owners of lots in Redgate Vista.
¶25 Miller’s reliance on and interpretation of Blazer is misplaced. Nothing in Blazer stands for the proposition that the dominant and servient tenement must be expressly labeled as such for the easement to be adequately described. And while Blazer presents a thorough review of the easement-by-reference rules and pertinent case law, we cannot rely solely on Blazer for our analysis because it is factually distinguishable. Not only was a portion of the purported dominant tenement in Blazer not even included on the certificate of survey, the alleged road easement terminated off the certificate of survey. Blazer, ¶¶ 3, 9. These facts weighed heavily in reaching the conclusion that neither the use or necessity of the easement could be determined nor could the dominant and servient tenements. Blazer, ¶¶ 53,57. Another important distinction between Blazer and the case at hand is that the parcels of land in Blazer were not in a platted subdivision. See Blazer, ¶ 2.
¶26 The process surrounding subdivisions is controlled by the Montana Subdivision and Platting Act. Section 76-3-304, MCA, provides in part:
The recording of any plat made in compliance with the provisions of this chapter shall serve to establish the identity of all lands shown on and being a part of such plat. Where lands are conveyed by reference to a plat, the plat itself or any copy of the plat properly certified by the county clerk and recorder as being a true copy thereof shall be regarded as incorporated into the instrument of conveyance and shall be received in evidence in all courts of this state.
We determined this statute stood for the proposition: “[W]here land is sold with reference to a map or plat showing a park or like open area, the purchaser acquires a private right, generally referred to as an easement, that such area shall be used in the manner designated.” Pearson, ¶ 19. In addition, we said that “an easement arises when a purchaser’s deed refers to a plat where an easement is depicted and labeled.” Pearson, ¶ 26.
¶27 Considering all of the instruments of conveyance, the easement-by-reference rules from Blazer, § 76-3-304, MCA, and Pearson, we determine that Red Gate, Inc. intended to create a negative easement restricting building on the western portion of Lot 7. We reach this conclusion after examining a number of factors. First, when Red Gate, *238 Inc. platted the subdivision, not only did it draw and label the building restriction line on the plat of Redgate Vista, it referenced it in its deed to the Hylsops. While we agree that “subject to” does not create an easement by itself, see Blazer, ¶¶ 28-29, we cannot ignore it as evidence of the grantor’s intent to restrict building.
¶28 Second, at the very least, the plat provided sufficient information to put Miller on inquiry notice. “Knowledge of the existence of a claim will be imputed to a party who has sufficient information to put it on inquiry notice of that claim .’’Halverson, 268 Mont. at 173, 885 P.2d at 1288. It was Miller’s responsibility to conduct an official inquiry into the extent of the negative easement rather than simply ignore the building restriction line on the plat and proceed with construction, giving rise to litigation to determine the extent of the restriction after she had expended money and resources.
¶29 Third, the description of the building restriction line was express enough to give Miller knowledge of the negative easement’s use and necessity. The only interpretation of the plain language of “building restriction line” is that the servient tenement owner cannot construct any structure on the western portion of Lot 7. We reject Miller’s argument that the plat must provide a purpose for the easement. The use-or “non-use” in the case of a negative easement-is that building in that location is prohibited, whether to protect a view or to prevent building on a steep slope. If Red Gate, Inc. wanted to only restrict the building of two-story homes, six foot fences, or dog runs, it would have said as much on the plat. Nonetheless, from the label on the plat we conclude that Red Gate, Inc. intended to restrict any and all building in that area, for whatever reason.
¶30 Finally, we can determine to a reasonable certainty the dominant and servient tenements of the Redgate Vista subdivision from the instruments of conveyance. All of the properties in question were sold with reference to a plat that included the building restriction line. According to our interpretation of § 76-3-304, MCA, in Benson and Pearson, the purchasers of the lots in the Redgate Vista subdivision acquired a private right to have Lot 7 used in the manner designated. Thus, the negative easement was created for the benefit of all of the lot owners. Moreover, we can see no logical reason that negative easements should be treated differently than improvements on the property, such as parks and open areas, if the purpose of the statute is to ensure that purchasers of the properties in the subdivision essentially get what they pay for. See Benson, 240 Mont. at 179, 783 P.2d at 925-26 (interpreting § 76-3-304, MCA, to create an easement *239 for the benefit of purchasers of subdivision lots so they could recover for fraudulent misrepresentations made by sellers).
¶31 In sum, the description “building restriction line” on the plat of the Redgate Vista subdivision clearly created a negative easement in favor of the Conways that restricts any building on the western portion of Miller’s Lot 7. The District Court did not err in concluding that Miller was prohibited from building in that area.

B. The Conways are not strangers to the deed.

¶32 Miller also argues that because the Conways are not parties in any conveyance to Miller or any conveyance in her chain of title, they are strangers to the deed. According to Miller, as strangers to the deed, the Conways failed to carry their burden to show the developer’s intent to create an easement.
¶33 Strangers to the deed are those who are not parties to it. Loomis v. Luraski, 2001 MT 223, ¶ 29, 306 Mont. 478, 36 P.3d 862.
A reservation of an interest in real property, to be good, must be made to all, some, or one of the grantors, and not to a stranger to the deed. The basis for this view is the ancient rule that words of reservation, (or exception), are not words of a grant and are ineffective to convey a right or interest to a stranger to a deed.
23 Am. Jur. 2d Deeds § 68 (2002). Although transactions involving a stranger to the deed are disfavored, where the intent of the grantor to reserve an interest in property to a stranger is clearly shown, we will give effect to the grantor’s intent. Loomis, ¶¶ 31-32.
¶34 When Red Gate, Inc. conveyed the lots at issue in 1973, it reserved the negative easement restricting building on Lot 7. Red Gate, Inc. conveyed its interest in Lot 7 to the other owners in the subdivision. At no point were any rights conveyed to an unrelated party. The Conways are not strangers to the deed.
¶35 Miller’s last two issues-whether the Conways extinguished the easement by building a privacy fence and whether destruction of Miller’s garage is a waste of resources-are based on the presumption that the purpose of the easement is to protect the Conways’ view. Nothing in the record shows that the purpose of the easement is to protect the view. We will not address arguments that are not supported by the record. Richards v. JTL Group, Inc., 2009 MT 173, ¶ 38, 350 Mont. 516, 212 P.3d 264 (citing M. R. App. P. 12(1)). The District Court did not err when it ordered Miller’s garage removed.
CONCLUSION
¶36 The instruments of conveyance clearly and unmistakably show *240 Red Gate, Inc.’s intent to create a negative easement that restricts building on the western portion of Miller’s Lot 7 for the benefit of the lot owners of the Redgate Vista subdivision. The easement is enforceable by the Conways and the District Court did not err in ordering Miller’s garage removed.
¶37 Affirmed.
CHIEF JUSTICE McGRATH, JUSTICES LEAPHART and MORRIS concur.