DA 12-0131

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 262

KEVIN BOTZ, RANDY THEKEN, and FPR PROPERTIES, LLC,

> Petitioners and Appellants,

v.

BRIDGER CANYON PLANNING AND ZONING COMMISSION,

> Respondent and Appellee,

and

BRIDGER CANYON PROPERTY OWNERS ASSOCIATION, INC.,

> Intervenor and Appellee.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause Nos. DV 10-1076B and
DV 10-1174CX
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

> For Appellants:

> Thomas J. Karem, Karem Law Firm, P.C., Bozeman, Montana

> For Appellee:

> Jennifer L. Farve, Moore, O'Connell & Refling, P.C., Bozeman, Montana

> For Intervenor:

> Brian K. Gallik, Goetz, Gallik & Baldwin, P.C., Bozeman, Montana

> Submitted on Briefs:  September 4, 2012

> Decided:  November 20, 2012

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     This appeal pertains to the location of a horse barn in the Brass Lantern Planned Unit Development in Bridger Canyon, Montana.  The owner of the barn, Randy Theken and FPR Properties, and Theken's contractor, Kevin Botz, assert the partially-constructed barn complies with both the zoning regulations and the covenants of the Brass Lantern development.  After notification by the Gallatin County Code Compliance Specialist that the barn did not comply with the regulations and the covenants and must be removed, FPR submitted an application to modify the conditional use permit of Brass Lantern development to bring the location of the barn into compliance.  Following public hearings, the Bridger Canyon Planning and Zoning Commission[1] affirmed the Code Compliance Specialist's (CCS) determination that the barn violated zoning regulations and applicable covenants.  The Commission also denied FPR's request to modify the conditional use permit for Brass Lantern.  FPR appealed the Commission's orders to the Eighteenth Judicial District Court.  The District Court affirmed the Commission's rulings.  FPR also argued to the District Court that the Commission's rulings amounted to a constitutional taking.  The District Court dismissed this claim without conducting a trial.  FPR appeals.  We affirm.

**ISSUES**

---

[1] The Respondent/Appellee in this case is Bridger Canyon Planning and Zoning Commission. We note from the record, however, that certain proceedings were conducted before the Gallatin County Planning and Zoning Commission.  The parties do not distinguish between the two commissions; rather, they simply refer to "Commission" when referencing the administrative proceedings.  For purposes of simplicity, we shall do the same.

3

¶2    A restatement of the issues on appeal is:

¶3    Did the District Court abuse its discretion by affirming the Bridger Canyon Planning and Zoning Commission's determination that the partially-constructed barn violated applicable zoning regulations and covenants and must be removed?

¶4    Did the District Court abuse its discretion by affirming the Bridger Canyon Planning and Zoning Commission's denial of FPR's application to modify the Brass Lantern Conditional Use Permit?

¶5    Did the District Court err in dismissing FPR's constitutional takings claim?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6    The Brass Lantern Planned Unit Development (PUD) was created in Bridger Canyon in 1984 by Donald Turner. Turner submitted an application to the Bridger Canyon Planning and Zoning Commission (Commission) requesting a conditional use permit (CUP) to create the Brass Lantern development, consisting of 100 acres, divided into five twenty-acre parcels. A diagram of the land and designated parcels was shown on Certificate of Survey (COS or Survey) 1154 filed with the Gallatin County Clerk and Recorder.

¶7    Turner explained in the application that each parcel would accommodate a single family dwelling located on a designated two-acre site. The application required that all areas other than the building site would remain open space. Both Gallatin County and the Bridger Canyon Property Owners Association (BCPOA or Owners Association) agreed with the provisions and supported creation of the PUD with minor alterations. Restrictive covenants were prepared and approved. These covenants indicated that the maximum

4

amount of land that could be covered by buildings was 17,424 square feet per parcel. In December 1984, the CUP was granted, the PUD was approved and the necessary documents were filed with the proper authorities.

¶8     The legend included on the recorded Survey expressly identified the two-acre building site for each parcel, stated that the maximum coverage for buildings per site was 17,424 square feet, and advised the viewer to see the Bridger Canyon zoning regulations pertaining to "open space." Additionally, the recorded restrictive covenants clearly stated that "All building sites are required to be located per the plat designation as described on 'Exhibit A'. . . . Homes and all outbuildings are to be limited to a 'square footage' of no more than 17,424 square feet per twenty (20) acre tract, perameters [sic] set forth in attachment, 'Exhibit B'." Exhibits A and B were not recorded with the covenants but were on file at the Gallatin County Planning Department.

¶9     In 2004, Kevin Botz, the owner of Tract E of the Brass Lantern PUD, applied to Gallatin County Planning Department for a permit, as required by the PUD covenants and Bridger Canyon Zoning Ordinance, to build a 7,676 square foot single family home on his property. Describing the setbacks for his proposed construction, Botz wrote "<u>As Per Brass Lantern Building Envelope</u>." He thereafter built his home in accordance with the permit and the designated building site, as approved by the Planning Department. In 2009, Botz sold Tract E to Randy Theken and FPR Properties. The Warranty Deed indicated that the property and sale were subject to "all building and use restrictions, covenants, easements, agreements, conditions and rights of way of record and those which would be disclosed by an examination of the property."

5

¶10   Upon completion of the purchase, FPR hired Botz to build a horse barn on Tract E. Without obtaining the required Land Use Permit (LUP), Botz began constructing the barn approximately 175 feet from the house. Neighbors complained to the Owners Association that the barn site was outside the approved building site for Tract E as set out on COS 1154-A. The Owners Association in turn complained to the Commission.

¶11   On January 28, 2010, after an investigation, a Gallatin County CCS notified FPR that the barn was located "outside the designated building envelope" and therefore violated the terms and covenants of the Brass Lantern CUP. The Compliance Specialist further determined that the barn violated two separate Bridger Canyon Zoning Regulations (BCZR): (1) it was constructed in designated open space, and (2) it was built prior to obtaining a required LUP. The CCS provided Botz with an after-the-fact LUP application and an application to request an amendment to the conditional use permit of the PUD as it pertained specifically to Tract E or for amendments to the CUP of the PUD as a whole. The Code Specialist requested that construction of the barn cease until the Commission ruled on the applications.

¶12   FPR did not appeal the CCS's decision; rather, it submitted the application for a CUP to modify the existing building site on Tract E by creating two smaller building sites. On May 11, 2010, before a hearing could be held on FPR's application, the CCS issued an order to remove the barn. The CCS explained that her recent review of the enforcement procedures in the BCZR revealed that the regulations do "not describe an application process as a means to resolve a zoning violation." Her order further stated:

6

Section 17.4.c provides that the Gallatin County Planning and Compliance Departments may issue cease and desist orders and require corrective action to remedy a violation, which may include an order to remove a noncompliant structure. **As directed by the Gallatin County Attorney's Office and Gallatin County Commission, I am hereby ordering you to remove the noncompliant horse barn in accordance with Section 17.4.c.**

(Emphasis in original.) On May 25, 2010, FPR appealed the removal order to the Commission.

¶13 On August 12, 2010, the Commission held a public hearing on FPR's appeal of the CCS's orders. The Commission issued its Findings, Conclusion and Order on September 7, 2010, in which it affirmed the CCS's January non-compliance decision, placed a hold on the CCS's May removal order until the Commission completed its review of FPR's CUP-modification application, and fined Botz $200 for failing to obtain the required Land Use Permit before initiating construction of the barn.

¶14 On September 9, 2010, the Commission conducted a hearing on FPR's application for modification to the CUP for Brass Lantern PUD to allow the building site of Tract E to be reconfigured. At this hearing a substantial amount of public opposition was expressed. By vote of 5-2, the Commission denied FPR's application to modify the CUP.

¶15 On October 8, 2010, FPR filed its petition and complaint in the District Court appealing the Commission's decision that FPR's barn was not in compliance with applicable zoning regulations and the PUD covenants. FPR also posited a constitutional takings claim. In January 2011, FPR filed a second amended petition and complaint, adding an appeal of the Commission's removal order.

7

¶16 The District Court affirmed the Commission's orders that the location of FPR's barn constituted a zoning and covenant violation and must be removed. The court also affirmed the Commission's decision to deny FPR's application for modification of the Brass Lantern PUD's CUP. The court did not hold a trial on FPR's constitutional claim, finding that FPR did not present a legal argument or legal authority to support the claim. FPR appeals.

## STANDARD OF REVIEW

¶17 Under applicable planning and zoning statutes, a district court, and in turn this Court, reviews a zoning authority's decision for an abuse of discretion. An abuse of discretion occurs when the information upon which the municipal entity based its decision is so lacking in fact and foundation that it is clearly unreasonable. *DeVoe v. City of Missoula*, 2012 MT 72, ¶ 10, 364 Mont. 375, 274 P.3d 752.

¶18 The interpretation and application of an ordinance are questions of law that this Court reviews de novo to determine whether they are correct. *Devoe*, ¶ 11. This Court does not sit as a super-legislature or super-zoning board. *Englin v. Board of County Comm'rs*, 2002 MT 115, ¶ 16, 310 Mont. 1, 48 P.3d 39.

¶19 This Court exercises plenary review of constitutional issues and a district court's decisions on constitutional issues are reviewed for correctness. *Devoe*, ¶ 12.

## DISCUSSION

¶20 *Did the District Court abuse its discretion by affirming the Bridger Canyon Planning and Zoning Commission's determination that the partially-constructed barn violated applicable zoning regulations and covenants and must be removed?*

8

¶21    Following the August 12, 2010 Commission public hearing, the Commission issued its findings of fact, legal conclusions and order.  Its findings addressed relevant provisions from the BCZR including, but not limited to, definitions, the purpose of planned unit developments, and standards for development.  The Commission also summarized public comments submitted during the hearing.

¶22    The Commission concluded that (1) it could not discern the intent of the Planning and Zoning Commission's 1984 approval of the PUD; (2) the 1984 Planning and Zoning Commission found that the Brass Lantern PUD complied with the zoning regulations and emphasized the agricultural character of the valley; (3) a livestock barn is an agricultural structure; (4) buildings on Tract E will affect the skyline regardless of where they are constructed; and (5) the zoning regulations pertaining to open space contain conflicting language.  Lastly, the Commission, by a vote of 4 to 2, affirmed the CCS's January decision of violation, placed the May removal decision on hold, scheduled a hearing on FPR's application for modification of the PUD, and fined Botz $200 for failing to obtain a LUP.

¶23    On appeal to the District Court, FPR argued that neither the zoning regulations nor the Conditional Use Permit for the PUD dictate where a barn must be located.  FPR maintained that the original CUP for the Brass Lantern PUD required that all buildings on any parcel not exceed 17,424 square feet and the residential dwelling must be placed within a designated building site.  FPR opined that other than complying with the square footage restriction, the PUD covenants did not regulate the location of a horse barn or other agricultural building.  It further asserted that the Commission's interpretation and

9

application of BCZR § 13.5.b.2 to conclude that FPR's barn location violated the regulation's open space requirements was error as a matter of law.

¶24 FPR also asserted that the Brass Lantern PUD is located in an "Agricultural Exclusive District" and that under BCZR § 6.2, the use of a barn is a "matter of right." FPR opined that the Commission's ruling constituted an illegal regulation of an agricultural activity. Lastly, FPR argued that the Brass Lantern PUD covenants did not restrict outbuildings to a "building envelope" and, because Exhibit A purporting to establish a building envelope was not recorded with the Survey, it is not binding on FPR.

¶25 The Commission argued to the District Court that the Certificate of Survey clearly designated a "building site" and FPR erred in its contention that the building site pertained to residential dwellings only. The Commission noted that the "overarching objective [of the PUD was] to improve and enhance open space and to preserve the visceral qualities of the area and its rural nature." It submitted that the Survey identified "the building site" and made no distinction between barns and homes. The Commission posited that the Survey and the covenants put FPR on notice that a building site restriction existed. The Commission further argued that had FPR obtained the required LUP before beginning construction, it likely would have been informed that the proposed barn location was in open space that was not available for construction. Testimony was provided that the Gallatin County Planning Department had informed Botz where the building site on Tract E was located when Botz applied for his LUP to build the house.

¶26 The District Court conducted a hearing on December 15, 2011, and on January 31, 2012, issued its Decision and Order. The court concluded that under both BCZR § 17.4

10

and Planning and Zoning statute § 76-2-113, MCA, the Commission had the authority to find FPR in violation for constructing a barn without obtaining a Land Use Permit and to remedy this violation with a removal order. Despite this determination, the court nonetheless addressed the other issues pertaining to the violation and removal orders raised by the parties.

¶27 The District Court relied upon *Conway v. Miller*, 2010 MT 103, 356 Mont. 231, 232 P.3d 390, in determining whether the Commission abused its discretion when it held that FPR violated the applicable regulations and covenants. In *Conway*, Miller, despite admittedly being put on notice that her subdivision plat had a "building restriction line," began constructing a garage that straddled the line, thereby building on both sides of the restriction line. Conways sued and this Court, in affirming the district court, held that the "building restriction line" language in Miller's deed created an enforceable "negative easement" benefitting the other property owners in the subdivision. Miller was ordered to remove the garage.

¶28 Applying this analysis to the facts before it, the District Court concluded that Turner intended to create a negative easement and FPR had "actual, constructive or inquiry notice of the building site restriction" through the terms and conditions of the Certificate of Survey, the contents of the regulations and the PUD map, and the recorded covenants for the Brass Lantern PUD. Based upon this analysis, the District Court concluded the Commission's decision to affirm the CCS's violation and removal orders "was correct, as a matter of law."

¶29 On appeal to this Court, FPR presents numerous arguments—both procedural and substantive—each proffered to establish that the Commission and the District Court abused their discretion in holding that FPR violated the covenants and zoning regulations. These arguments include, among others, allegations that the Commission and/or the District Court (1) misinterpreted and misapplied zoning regulations; (2) erroneously relied upon unrecorded documents, public comments, and parol evidence; and (3) did not have standing to enforce the covenants. FPR's arguments, however, serve to complicate an otherwise straightforward question: Does the express language of the Certificate of Survey, the Brass Lantern PUD covenants, and the Warranty Deed from Botz to FPR support the Commission's ruling that FPR's barn location violates the covenants and must be removed?

¶30 The Certificate of Survey No. 1154-A specifically identifies a "building site" for each of the five parcels in the Brass Lantern PUD. The Survey includes the following reference:

⬡ BUILDING SITE (MAX. COVERAGE ALLOWED BY BUILDINGS/TRACT 17,424 S.F.) SEE OPEN SPACE REQUIRED BY BRIDGER CANYON ZONING.

Notably, the legend does not reference or identify a "residential dwelling site"; rather, it specifies the location of the "building site" and indicates that "buildings" may not exceed 17,424 square feet.

¶31 Additionally, Article III, Section 2 of the recorded Restrictive Covenants specifically states: "All building sites are required to be located per the plat designation as described on 'Exhibit A', attached hereto. Homes and all outbuildings are to be

12

limited to a 'square footage' of no more than 17,424 square feet per twenty (20) acre tract, perameters [sic] set forth in attachment, 'Exhibit B'." FPR argues that this language should be interpreted to mean that an outbuilding may be placed in a location other than the designated "building site" provided it does not cause the cumulative total of buildings to exceed 17,424 square feet. We conclude it was not an abuse of discretion for the Commission and the District Court to conclude that outbuildings must be constructed within the identified building site.

¶32 Furthermore, while we acknowledge that Exhibits A and B were not recorded with the covenants and the Survey (the exhibits were filed with the Gallatin County Planning Department), the recorded Survey and covenants put FPR on notice that there were restrictions on the locations of buildings on the plat. In addition, the Warranty Deed from Botz to FPR indicates that the sale was "subject to . . . all building and use restrictions, covenants, easements, agreements, conditions and rights of way of record and those which would be disclosed by an examination of the property." This again put FPR on notice that building restrictions were attached to the plat purchased from Botz.

¶33 Lastly, as noted above, a finding by the Commission that FPR failed to obtain the necessary Land Use Permit prior to beginning construction justifies its ruling that FPR violated the zoning regulations. The zoning regulations authorize the Commission to order removal of an offending construction upon determining that such a violation has occurred.

¶34 Based upon the express language of the sales documents, the regulations and covenants, we can resolve this issue without application of the "negative easement"

13

analysis in *Conway* upon which the District Court relied. The Commission's decisions did not constitute an abuse of discretion as they were not "so lacking in fact and foundation that [they were] clearly unreasonable." *Devoe*, ¶ 10. While the Commission and the District Court may have based their decisions on different legal rationales, we will affirm an administrative or district court decision that reached the right result even if reached for the wrong reason. *Mont. Solid Waste Contrs. v. Mont. Dep't of Pub. Serv. Regulation*, 2007 MT 154, ¶ 29, 338 Mont. 1, 161 P.3d 837. We therefore affirm the Commission's violation and removal orders and the District Court's decision affirming these orders.

¶35    *Did the District Court abuse its discretion by affirming the Bridger Canyon Planning and Zoning Commission's denial of FPR's application to modify the Brass Lantern Conditional Use Permit?*

¶36    We must next determine whether the Commission abused its discretion by denying FPR's request to modify the Brass Lantern PUD's CUP to allow FPR to complete the barn in its present location, and whether the District Court in turn erred in affirming this decision.

¶37    Following a public hearing to review FPR's application to modify the Brass Lantern PUD's CUP, in which it accepted considerable public comments, the Commission denied FPR's modification application by a vote of 5 to 2. The Commission concluded that it was unable to find that the proposed modification "would not, under the circumstances of the particular case, be detrimental to the health, safety, peace, morals, comfort and general welfare of the Bridger Canyon Zoning District as required to issue a CUP to modify the PUD." The Commission further found the application to modify the

14

building site did not meet the purposes of a PUD as established under § 13.1(a-i) of the Zoning Regulations. The Commission noted that, at the time he purchased the property, Botz knew of the restrictions and obtained the required permit for building his house, and if he, as FPR's contractor, had sought the LUP required to construct the barn, in all probability, the Planning Department would have prevented him from building the barn in designated open space, and this suit would have been avoided.

¶38 The District Court subsequently concluded that the record supported the Commission's denial of the application to modify the PUD. The court noted that the Commission's decision was based upon applicable regulations, the terms and conditions of the Brass Lantern PUD, staff reports, exhibits, and public testimony. Based upon the record and the applicable standard of review, the court concluded the Commission did not abuse its discretion in denying the request to modify the PUD's CUP.

¶39 FPR argues on appeal that the denial was a "plain abuse of discretion" because its modification application complied with "all relevant zoning regulations and [was] not detrimental to health and safety." Again, FPR alleges the Commission and/or the District Court misinterpreted or misapplied the BCZR.

¶40 We need not address each individual claim of error posited by FPR given that the record supports the conclusion that the modification application did not satisfy the requirements set forth in BCZR §§ 13.1 and 17.3.2. Section 13.1 sets forth the purpose of a PUD and was rightly considered by the Commission in determining whether FPR's application to modify the PUD was justified. Section 13.1 reflects an intention to preserve and enhance open spaces and unique natural features, protect areas of wildlife

15

habitat, reduce the visual impact of development, and preserve scenic vistas and the rural atmosphere.

¶41 FPR argues that the Commission did not have the right to rely upon BCZR § 13.1 as this regulation pertains to planned unit developments and not conditional use permits. We disagree. The Brass Lantern PUD was undeniably a planned unit development and nothing about the CUP-modification proceeding changed that designation. As such, the PUD purpose regulations set forth in BCZR § 13.1 continued to apply and could be considered by the Commission. Allowing a modification to a CUP that could circumvent the purposes of a PUD would be detrimental to the regulatory scheme as a whole developed by the Commission.

¶42 Section 17.3.2 entitled "Conditional Use Permits" states:

> Conditional Use Permits shall be issued only by the Bridger Canyon Planning and Zoning Commission and may be issued for any of the uses as set forth in this Regulation. Such permit may be granted only if it is found that the establishment, maintenance, or operation of the use or building applied for will not under the circumstances of the particular case, be detrimental to health, safety, peace, morals, comfort and general welfare of the Bridger Canyon Zoning District.

¶43 As noted above, the neighboring public presented numerous comments and concerns at the public hearing pertaining to the horse barn site and the request to modify the CUP to accommodate the location. Many commenters opined that modifying the CUP to accommodate the completion of a barn whose construction began in violation of the regulations and whose location would thwart the open space requirements, constituted an action that would "be detrimental to health, safety, peace, morals, comfort and general welfare" of the BCZR. The Commission agreed and concluded it could *not* find that

16

FPR's request would *not* be detrimental. We conclude the record supports a finding that the modification may indeed have been detrimental to those factors; therefore, we conclude the Commission did not abuse its discretion.

¶44 Having concluded the Commission did not abuse its discretion in reaching this ruling, we conclude the District Court did not abuse its discretion in affirming it.

¶45 *Did the District Court err in dismissing FPR's constitutional takings claim?*

¶46 The District Court noted that but for "a fleeting reference to the United States and Montana Constitutions with respect to the local adoption of ordinances, [FPR has] not discussed, explained or developed a constitutional theory as to how they have been denied their due process rights under the Constitutions." As a result, the District Court did not conduct a trial on the merits of FPR's constitutional claim. On appeal, FPR challenges this determination but provides no legal argument in support of its constitutional claim. We have stated on numerous occasions that under, M. R. App. P. 23, we are not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position. *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339 ("Under Rule 23, M.R.App.P., it is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position."). Because FPR has failed to develop any legal argument, authority or analysis for its constitutional claim, we do not address the argument.

**CONCLUSION**

17

¶47    For the foregoing reasons, we affirm the Commission and the District Court's decisions.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON