
DA 12-0117

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 89

MARY MCCULLEY,

       Plaintiff and Appellant,

  v.

AMERICAN LAND TITLE COMPANY
and U.S. BANK OF MONTANA,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-09-562C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Mary McCulley (Self-Represented), Bozeman, Montana

       For Appellee American Land Title Company:

           Steven Reida, Alex Roots, Landoe, Brown, Planalp & Reida, P.C.,
Bozeman, Montana

       For Appellee U.S. Bank of Montana:

           Mark C. Sherer, Mackoff Kellogg Law Firm, Dickinson, North Dakota

Submitted on Briefs:  January 31, 2013

Decided:  April 9, 2013

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    In 2006, Mary McCulley purchased a condominium (Condo) in downtown Bozeman, Montana, for $395,000. She sought a residential loan from Heritage Bank, predecessor to defendant U.S. Bank of Montana (hereinafter U.S. Bank or the Bank) for $300,000. American Land Title Company (ALTC) provided a Commitment for Title Insurance. McCulley signed a Promissory Note (Note) and signed a Deed of Trust (Deed) as collateral. The Deed indicated that the Condo was for "residential purposes only." Subsequently, however, and purportedly without McCulley's knowledge, ALTC changed the designated use of the Condo in the Deed from residential to commercial.

¶2    After closing in June 2006, McCulley asserts she discovered the Bank had issued her an 18-month, $300,000 commercial property loan rather than the 30-year residential property loan for which she applied. When she was unable to obtain long-term refinancing on the property, McCulley signed a Warranty Deed transferring ownership of the Condo to the Central Asia Institute. She used the proceeds to pay off the loan. She then sued ALTC and U.S. Bank for negligence, breach of contract, fraud, slander of title, intentional infliction of emotional distress, and malice. All parties filed motions for summary judgment. The District Court granted ALTC's and U.S. Bank's motions for summary judgment and denied McCulley's. McCulley appeals. We affirm in part and reverse and remand in part.

**ISSUE**

¶3    A restatement of the issue on appeal is:

2

¶4 Did the District Court err in granting summary judgment to American Land Title Company and U.S. Bank?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 In May 2006, Mary McCulley agreed to purchase a condominium on East Main Street in downtown Bozeman, Montana. The Condo was located on the top floor of a commercial building and was priced at $395,000. McCulley approached Heritage Bank (later purchased by U.S. Bank) on May 25, 2006, and applied for a 30-year (360 month) residential loan for $300,000, later revised to $200,000. On that same day, Heritage Bank generated a Federal Truth-In-Lending Disclosure Statement indicating the estimated monthly payment for the first 60 months, the estimated payment for the next 299 months, and the final payment due on July 1, 2036. It also issued a Good Faith Estimate that expressly referenced 360 payments for McCulley's proposed loan.

¶6 On the following day, the Bank ostensibly prepared an informational document ("the letter") utilizing a format typically used for internal interoffice correspondence or documentation. There was no salutation, introductory paragraph, or signature line. The document favorably analyzed McCulley's credit-worthiness for a $300,000 loan, but noted that while the Condo was "residential," the lot upon which it was built was zoned commercial B2. The Bank stated in the document that such commercial zoning precluded "the use of standard secondary market sources for financing a residential condominium." Consequently, the Bank categorized the proposed loan as an 18-month "consumer bridge" loan. The Bank professes this "letter" was sent to McCulley at the time it was generated and that she agreed to the new terms, including a loan maturity date

3

of December 16, 2007. McCulley strongly denies ever receiving this document or agreeing to an 18-month finance term.

¶7 The loan closing was conducted less than three weeks later, on June 16, 2006. The Promissory Note and the Disclosure Statement signed by McCulley at closing stated that the $300,000 loan matured on December 16, 2007. Additionally, the Deed of Trust signed by McCulley at closing indicated that the Condo was to be used for residential purposes only. It is undisputed, however, that without McCulley's knowledge, ALTC subsequently changed the Deed prior to recording it to reflect that the Condo was to be used for commercial purposes only.

¶8 McCulley made monthly payments to the Bank throughout 2006 and 2007. She claims she thought she was making normal mortgage payments. The Bank claims she was making the required monthly *interest* payments. In the fall of 2007, McCulley received notice that a balloon payment on her 18-month loan was due in December 2007. McCulley claims not to have known until that time that she did not have the 30-year residential mortgage for which she had applied. While trying to resolve the issue with the Bank, McCulley renegotiated the loan to extend the maturity date to June 16, 2008. She did so again in June 2008, extending the maturity date to October 16, 2008. Ultimately, unable to find suitable long-term residential financing, McCulley signed a Warranty Deed transferring the Condo to the Central Asia Institute in June 2009, and paid off the note.

¶9 In June 2009, McCulley, represented by counsel,[1] filed her first complaint against ALTC and U.S. Bank. She filed and served a first amended complaint in October 2009. She claimed the defendants: (1) were negligent in their loan dealing with her; (2) breached the executed contracts; (3) committed fraud by misrepresenting the nature of the loan; (4) slandered the title on the property by recording a Deed showing the Condo was commercial property when she believed she had purchased residential property; and (5) intentionally inflicted emotional distress upon her. She moved to amend the complaint again in October 2010 to correct alleged errors former counsel had made in the first amended complaint and to add a claim for actual malice. This motion was granted on November 16, 2010.

¶10 McCulley moved for summary judgment. ALTC and the Bank also filed motions for summary judgment. The District Court conducted a summary judgment hearing on September 9, 2011. On January 12, 2012, the District Court issued its Order denying McCulley's motion for summary judgment and granting ALTC's and U.S. Bank's motions. It subsequently entered judgment in favor of U.S. Bank and ALTC. McCulley filed a timely appeal.

### STANDARD OF REVIEW

¶11 We review a district court's grant of summary judgment de novo, applying the same criteria as the district court. A district court properly grants summary judgment only when no genuine issues of material fact exist and the moving party is entitled to

---

[1] Counsel for McCulley withdrew in February 2010. McCulley represented herself for the duration of the proceeding.

judgment as a matter of law. *Siebken v. Voderberg*, 2012 MT 291, ¶ 16, 367 Mont. 344, 291 P.3d 572. If, however, genuine issues of material fact do exist in a case, it is not the function of the district court to enter summary judgment; in fact, summary judgment is precluded. *Schmidt v. Washington Contrs. Group, Inc.*, 1998 MT 194, ¶ 26, 290 Mont. 276, 964 P.2d 34.

## DISCUSSION

¶12 *Did the District Court err in granting summary judgment to American Land Title Company and U.S. Bank?*

¶13 McCulley appeals the District Court's ruling in favor of the Bank as it applies to her claims that the Bank breached its contract and the covenant of good faith and fair dealing, acted negligently, and committed fraud. She appeals the District Court's ruling in favor of ALTC as it applies to her claim that ALTC acted negligently and committed fraud. She asserts the District Court erred in granting summary judgment to ALTC and the Bank because genuine issues of material fact exist as to each of these claims. We affirm the District Court's rulings as to McCulley's claims of breach of contract and negligence against the Bank and her claims of negligence and fraud against ALTC. We reverse the court's ruling vis-à-vis McCulley's claim that the Bank committed fraud in its dealings with her.

*Claims Against ALTC*

¶14 We first address the court's rulings pertaining to ALTC. It is undisputed that after McCulley signed the original Deed stating the Condo could be used for residential purposes only, ALTC changed the Deed to reflect that the Condo was to be used for

6

commercial purposes only. ALTC then recorded the revised Deed. McCulley argued that this change, unbeknownst to her, later caused her to be unable to obtain refinancing through a conventional long-term residential loan. However, it is also undisputed that the Bank and McCulley executed two subsequent modifications of the Deed of Trust, both of which expressly reflected in the legal description of the property that the Condo was to be used for residential purposes only.

¶15 The District Court determined that the legal description in the Deed of Trust and any subsequent changes thereto did not diminish McCulley's legal title to the Condo nor did it change the use of the property or the zoning classification of the property. Noting that the property on which the Condo was built was zoned commercial before McCulley purchased the Condo, the court concluded that the change to the original Deed of Trust did not prevent McCulley from obtaining conventional financing; rather, the property's zoning classification did. As such, the revised legal description was not the cause of her inability to refinance her loan. The court further concluded that the Condo By-Laws would control the use of the Condo, not the Deed of Trust. And lastly, the District Court ruled that terms of the Promissory Note dictated whether the loan was residential, commercial or construction, and McCulley had made no allegation that ALTC was involved in the negotiation or creation of the Promissory Note.

¶16 Premised on the foregoing findings, the District Court determined that McCulley failed to establish that ALTC's change to the Deed proximately caused McCulley's damages. Consequently, her negligence claim must fail. As for her fraud claim against ALTC, the District Court concluded there was no evidence to indicate that ALTC

intended to misrepresent the legal description of the property, which is one of the nine mandatory elements of fraud; therefore, McCulley was unable to establish fraud. For these reasons, the District Court granted ALTC's motion for summary judgment.

¶17 As noted by the District Court, while a Deed of Trust contains a legal description of property subject to transfer, such description does not alter the use, nature, or zoning of the property. Zoning in the City of Bozeman and in Gallatin County is controlled by specific ordinances and regulations. Moreover, the Deed was subsequently revised— twice—to correctly reflect the use of the Condo as residential. Therefore, the original Deed was no longer controlling. Under these circumstances, McCulley failed to establish that ALTC's change to the original Deed breached a duty owed to her or that such breach caused her injuries warranting damages. Consequently, the District Court did not err in granting summary judgment to ALTC on this issue.

¶18 Addressing McCulley's claim on appeal that ALTC committed fraud when it revised the original Deed, we note that McCulley presents no legal argument or authority to support her contention. McCulley's entire argument before this Court vis-à-vis her claim that ALTC committed fraud when it altered the original Deed is as follows:

> The record is clear as to ALTC's admission with regard to altering the Deed of Trust after the execution and without having the relevant parties initial such change. Fraud seems clear. It should be an issue determined by a jury, not Judge Brown, as to if this change is a "scrivener's error" or if it is fraud as well as to what extent [McCulley] was damaged by the same.

¶19 To establish a prima facie claim for fraud, a party asserting the claim must set forth specific facts to satisfy the nine mandatory elements of actual fraud. *See In re*

8

*Estate of Kindsfather*, 2005 MT 51, ¶ 17, 326 Mont. 192, 108 P.3d 487. Actual fraud is a question of fact and a "mere suspicion of fraud" is insufficient. *Franks*, ¶ 18. While certainly in many cases a jury sits in the role as "fact-finder," in many cases, as in this one, the trial judge assumes this role. *H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, ¶ 55, 301 Mont. 34, 8 P.3d 95. McCulley failed to set forth the necessary facts to establish the nine elements before the District Court and has not even attempted to establish the elements on appeal. McCulley's conclusory statement that "[f]raud seems clear" is insufficient to sustain her claim.

¶20     As we have stated on numerous occasions, under M. R. App. P. 23 we are not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position. *Botz v. Bridger Canyon Planning & Zoning Comm'n*, 2012 MT 262, ¶ 46, 367 Mont. 47, 289 P.3d 180 (*citing In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339). Because McCulley has failed to develop any legal argument, authority or analysis for her claim of fraud, we do not address the argument further. We therefore affirm the District Court order of summary judgment in favor of ALTC on the issue of fraud.

*Claims Against U.S. Bank*

¶21     We now turn to McCulley's various claims against U.S. Bank. McCulley alleges the Bank engaged in negligence, fraud, breach of contract, breach of the covenant of good faith and fair dealing, and infliction of emotional distress. To a significant extent, McCulley attempts throughout her arguments to blame the Bank for the actions of ALTC. The District Court rejected this proposition, as do we. McCulley appeals only the District

Court's rulings pertaining to breach of contract and the covenant of good faith and fair dealing, negligence, and fraud. We address her claims against the Bank in turn.

¶22    Turning first to McCulley's allegation of breach of contract, McCulley's sole argument in her Motion for Summary Judgment was that defendants ALTC and the Bank breached the contracts "by failing to abide by the terms asserted therein, and rendered the contract void by substantial alterations of the deed." She opined that ALTC and the Bank had "significantly altered" enforceable contracts rendering them unusable. The District Court concluded that the Bank had "nothing to do with ALTC's alteration of the usage restriction change on the Deed of Trust." As a result, the District Court ruled that "[b]ecause US Bank did not alter the usage restriction on the Deed of Trust, US Bank did not breach its contract with McCulley." We agree with the District Court. Further, we observe that the actual loan contracts were not breached. McCulley signed multiple documents at the closing, comprised of close to 100 pages of fine print. In the three places in the documents where the term of the loan was actually set forth, a maturity date of "12-16-07" is reflected. Therefore, notwithstanding the potential viability of other claims against the Bank, the Bank cannot be said to have breached the written contracts.

¶23    McCulley also argues on appeal that the Bank breached "the implied covenant of good faith and fair dealing as well as its duty of 'honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.' " We reject this argument because it was not presented in the District Court. While McCulley mentioned "implied good faith and fair dealing" in passing, her argument in the District Court focused on her contention that the Bank participated with ALTC in revising the Deed of Trust, a theory

10

for which there is no factual support whatsoever. This Court generally refuses to address a changed legal theory on appeal because it would be "fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Mt. W. Bank, N.A. v. Glacier Kitchens, Inc.*, 2012 MT 132, ¶ 13, 365 Mont. 276, 281 P.3d 600. As the District Court correctly ruled based upon the legal theory presented by McCulley, we affirm the court on the issue of the Bank's breach of contract.

¶24 As to McCulley's claim of negligence against the Bank, McCulley argued to the District Court that the defendants owed her a duty of care when preparing her loan documents and in assuring the accuracy of the documents, and that both ALTC and the Bank breached their duty by failing to assure the accuracy of the documents and in performing their duties in good faith. Again, as noted by the District Court, the Bank owed a duty to draw up the loan documents but there was no evidence that the Bank had anything to do with the alteration of the Deed of Trust. The District Court therefore held that McCulley's negligence claim against the Bank failed.

¶25 On appeal, McCulley argues that a fiduciary duty arose between her and the Bank when the Bank "became an advisor to [her] by substituting a short-term . . . loan for the mortgage for which she applied." She claims the Bank "owed her a fiduciary duty to disclose to her the full terms of the loan that it unilaterally designed to get her business and the short-term in which she would need to pay off the total principal." She further asserts that the Bank breached its fiduciary duty in providing her with a loan "designed for her to fail in the first place."

11

¶26 McCulley did not argue in the summary judgment proceedings that the Bank became an "advisor" to her and that this caused a fiduciary duty to arise. For the reason explained above, we decline to address this legal theory for the first time on appeal. *Mt. W. Bank*, ¶ 13. We therefore affirm the District Court's ruling that there existed no genuine issues of material fact as to McCulley's claim that the Bank was negligent in its dealings with her.

¶27 Finally, we address McCulley's claim that the Bank committed fraud by engaging in "bait and switch" tactics to change her approved 30-year residential mortgage to an 18-month balloon construction loan without her knowledge. She argued to the District Court that the defendants initially represented to her that she was getting a residential loan on a residential property. She further asserted that ALTC and the Bank "knowingly made false representation as to the use and description of the property," and that the Bank referred to the loan "as a tradition [sic] mortgage in every document received by them."

¶28 The District Court found that McCulley failed to state facts supporting each of the nine elements of fraud. It reasoned that there was no admissible evidence in the record to support a fraud claim against the Bank in that the Bank made no changes to the legal description or use description of the Condo in the Deed of Trust.

¶29 On appeal, the Bank argues that McCulley predicates her fraud claim on her belief that the Bank altered the Deed of Trust after she signed it, and because it did not, McCulley's claim fails. It further asserts that McCulley "has not and cannot offer facts to support all nine elements of fraud," and therefore the District Court's decision should stand.

¶30    McCulley argues that the Bank was in possession of the Buy-Sell Agreement wherein McCulley indicated that the zoning determination was a condition of purchase; therefore, the Bank should have informed her from the beginning that the commercial zoning of the property would preclude her from obtaining the residential 30-year mortgage for which she applied.  She asserts that had she been provided this information, she would not have proceeded with the purchase transaction.

¶31    McCulley further argues that the Bank untruthfully claimed to have sent her the "letter" dated May 26, 2006, "outlining the terms of her loan" and explaining that she was getting an 18-month consumer bridge loan in the amount of $300,000.  McCulley adamantly denies ever having received such a document.  She correctly notes that this ostensible "letter" is formatted not as personal correspondence to her, but rather as an interoffice memorandum.  She further points out that the terms of this ostensible letter are wholly contrary to the terms of the Truth in Lending Statement and Good Faith Estimate documents sent to her by the Bank the day before, setting forth the terms and conditions of a 30-year residential mortgage.

¶32    To establish a prima facie case for fraud, McCulley must establish:  (1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge that the representation is false; (5) the speaker's intent that the representation will be relied upon by the hearer to his or her detriment; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused

13

by their reliance on the representation. *In re Adoption of S.R.T.*, 2011 MT 219, ¶ 16, 362 Mont. 39, 260 P.3d 177.

¶33 Generally speaking, once an agreement is reduced to writing, it is considered to contain all terms of the agreement and extrinsic evidence concerning the intentions of the parties is not admissible. Section 28-2-905(1), MCA. As noted herein, the documents prepared by the Bank and signed by McCulley did in three locations reference an 18-month loan as opposed to a 30-year loan. However, this factor does not necessarily preclude McCulley from presenting her fraud claims, as § 28-2-905(2), MCA, provides that the statute "does not exclude other evidence of the circumstances under which the agreement was made or to which it relates . . . or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud."

¶34 McCulley testified that she had no idea that the Bank was extending only an 18-month commercial loan instead of a 30-year residential loan. Along with her realtor, she attended the closing just three weeks after applying for her loan and receiving documents from the Bank outlining the terms of the 30-year mortgage. Both McCulley and her realtor swore under oath that no mention was made at the closing of the fact that she was receiving an 18-month commercial loan, and that they both assumed that she was closing on the 30-year residential loan as previously contemplated. In fact, she asserts that she was unaware that she had received an 18-month loan until the Bank notified her that her balloon payment was coming due in December 2007.

¶35 In light of the foregoing chronology of events, and in particular noting McCulley's arguably legitimate contention that the May 26 "letter" was not a letter to her at all, we

14

cannot conclude that there is no genuine issue of material fact relative to McCulley's claim of fraud on the part of the Bank. McCulley maintains that the Bank sent her documents outlining the terms of a 30-year residential mortgage and that it closed on the loan not three weeks later without a mention that the terms of the loan were radically different than those initially agreed to between the parties.[2] Although inartfully, McCulley has set forth sufficient facts to raise a genuine issue of whether a false and material representation may have been made to her, that she acted upon it in ignorance of the true facts, and that the Bank intended her to do so, resulting in damages. She supported these claims with testimony in her deposition that she never received the "letter" and that the Bank did not explain to her the change in the terms of her loan. It bears repeating that summary judgment is precluded in cases in which genuine issues of material fact exist. *Schmidt*, ¶ 26.

¶36 For these reasons, we reverse the District Court's order of summary judgment in favor of the Bank on the issue of fraud and remand the matter to the District Court for further proceedings.

¶37 Finally, we note that McCulley claims she sustained damages as a result of the Bank's alleged fraud, including damages for emotional distress. The District Court can address these claims on remand.

**CONCLUSION**

---

[2] U.S. Bank Vice President Steve Fuert provided an affidavit in which he stated it is the Bank's procedure to explain the terms of the loan documents before they are executed, and that there is nothing in the file to indicate these procedures were not followed.

15

¶38    We affirm the District Court's grant of summary judgment to ALTC and the court's grant of summary judgment to U.S. Bank as it pertains to the issues of breach of contract and negligence.  We reverse the court's summary judgment ruling in favor of the Bank as it pertains to McCulley's allegation of fraud and remand this issue and the issue of damages to the District Court for further proceedings.


/S/ PATRICIA COTTER


We concur:

/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ LAURIE McKINNON
/S/ BETH BAKER